## LORD *v.* STEAMSHIP COMPANY.

1. While navigating the high seas between ports of the same State, a vessel of the United States is, together with the business in which she is engaged, subject to the regulating power of Congress.
2. Sect. 4283 of the Revised Statutes, as limited in its application by sect. 4289, is not unconstitutional.

ERROR to the Circuit Court of the United States for the District of California.

Sects. 4283 and 4289 of the Revised Statutes are as follows : —

" SECT. 4283. The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing lost, damage or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount of the value of the interest of such owner in such vessel, and her freight then pending."

" SECT. 4289. The provision of the seven preceding sections relating to the limitation of the liability of the owners of vessels shall not apply to the owners of any canal-boat, barge, or lighter, or to any vessel of any description whatsoever used in rivers or inland navigation."

Sect. 4283 was one of the seven sections referred to in sect. 4289.

The steamship "Ventura," owned by the defendant in error, the Goodall, Nelson, and Perkins Steamship Company, was employed in navigation between San Francisco and San Diego, in the State of California, touching at the intermediate ports on the coast. In making her voyages she ran a distance of four hundred and eighty miles on the Pacific Ocean. She formed part of a transportation line which was largely engaged in foreign and inter-state commerce, but was herself only employed on her own route, and neither took on nor put off goods outside of the State of California. While on one of her regular voyages from San Francisco to San Diego she was totally lost, with all her pending freight and cargo, on the coast of California, without the privity or knowledge of her owner. This suit was brought against her owner as a common carrier to recover the value of the goods lost. The cargo was mostly owned by retail merchants in San Diego and other places in California who had made purchases for their business from wholesale merchants in San Francisco and was in transit from there. The steamship company pleaded its exemption from liability as owner of the vessel under sect. 4283 of the Revised Statutes. On the trial the court instructed the jury "that if the jury believed that the said losses occurred solely by reason of the negligence of the master of said ship and without the privity or knowledge or neglect of said defendant, that said sect. 4283 of the Revised Statutes fully exonerated the defendant from liability for any such losses, notwithstanding the goods when lost were being transported on a journey, the final termini of which were different points in the State of California." To this charge an exception was duly taken. The jury found in favor of the defendant, and judgment was rendered accordingly. To reverse that judgment the present writ of error was sued out.

*Mr. Samuel F. Leib* and *Mr. Charles A. Kent*, for the plaintiff in error.

Sect. 4283 of the Revised Statutes has no application to the case at bar, for it has repeatedly been held that the clause of the Constitution conferring upon Congress the power to " regulate commerce with foreign nations, and among the several States, and with the Indian tribes," does not authorize

that body to exercise any control over the purely internal commerce of a State. *Gibbons* v. *Ogden*, 9 Wheat. 1; *License Cases*, 5 How. 504; *Passenger Cases*, 7 id. 283; *Allen* v. *Newberry*, 21 id. 244; *Maguire* v. *Card*, id. 248; *Sinnot* v. *Davenport*, 22 id. 227; *Moore* v. *American Transportation Co.*, 24 id. 1; *United States* v. *Holliday*, 3 Wall. 407; *License Tax Cases*, 5 id. 462; *Steamship Company* v. *Port Wardens*, 6 id. 31; *Woodruff* v. *Parham*, 8 id. 123; *United States* v. *Dewitt*, 9 id. 41; *The Daniel Ball*, 10 id. 557; *State Tonnage Tax Cases*, 12 id. 204; *Case of the State Freight Tax*, 15 id. 232; *Peete* v. *Morgan*, 19 id. 581; *The Seneca*, 1 Biss. 371; *The Tug Oconto*, 5 id. 463, and cases cited; *The Mary Washington*, 1 Abb. (U. S.) 1; *The James Morrison*, 1 Newb. Adm. 241; *Sears* v. *The Board, &c.*, 36 Ind. 270; *Navigation Company* v. *Dwyer*, 29 Tex. 382; Story, Const., sect. 1061.

*Mr. John E. Ward, contra.*

Congress did not, in passing sect. 4283 of the Revised Statutes, attempt or intend to exercise any power over the internal commerce of a State. Its object was to regulate an instrument of commerce over which it had undoubted control.

Mr. Chief Justice Waite, after stating the facts, delivered the opinion of the court.

The single question presented by the assignment of errors is, whether Congress has power to regulate the liability of the owners of vessels navigating the high seas, but engaged only in the transportation of goods and passengers between ports and places in the same State. It is conceded that while the Ventura carried goods from place to place in California, her voyages were always ocean voyages.

Congress has power " to regulate commerce with foreign nations and among the several States, and with the Indian tribes " (Const., art. 1, sect. 8), but it has nothing to do with the purely internal commerce of the States, that is to say, with such commerce as is carried on between different parts of the same State, if its operations are confined exclusively to the jurisdiction and territory of that State, and do not affect other nations or States or the Indian tribes. This has never been disputed since the case of *Gibbons* v. *Ogden*, 9 Wheat. 1. The

contracts sued on in the present case were in effect to carry goods from San Francisco to San Diego by the way of the Pacific Ocean. They could not be performed except by going not only out of California, but out of the United States as well.

Commerce includes intercourse, navigation, and not traffic alone. This also was settled in *Gibbons* v. *Ogden, supra.* " Commerce with foreign nations," says Mr. Justice Daniel, for the court, in *Veazie* v. *Moor* (14 How. 568), " must signify commerce which, in some sense, is necessarily connected with these nations, transactions which either immediately or at some stage of their progress must be extra-territorial." p. 573.

The Pacific Ocean belongs to no one nation, but is the common property of all. When, therefore, the Ventura went out from San Francisco or San Diego on her several voyages, she entered on a navigation which was necessarily connected with other nations. While on the ocean her national character only was recognized, and she was subject to such laws as the commercial nations of the world had, by usage or otherwise, agreed on for the government of the vehicles of commerce occupying this common property of all mankind. She was navigating among the vessels of other nations and was treated by them as belonging to the country whose flag she carried. True, she was not trading with them, but she was navigating with them, and consequently with them was engaged in commerce. If in her navigation she inflicted a wrong on another country, the United States, and not the State of California, must answer for what was done. In every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign nations, and as such she and the business in which she was engaged were subject to the regulating power of Congress.

Navigation on the high seas is necessarily national in its character. Such navigation is clearly a matter of " external concern," affecting the nation as a nation in its external affairs. It must, therefore, be subject to the national government.

This disposes of the case, since, by sect. 4289 of the Revised Statutes, the provisions of sect. 4283 are not applicable to vessels used in rivers or inland navigation, and this legislation, therefore, is relieved from the objection that proved fatal to the trade-mark law which was considered in *Trade-Mark Cases,*

100 U. S. 82. The commerce regulated is expressly confined to a kind over which Congress has been given control. There is not here, as in *Allen* v. *Newberry* (21 How. 244), a question of admiralty jurisdiction under the law of 1845, but of the power of Congress over the commerce of the United States. The contracts sued on do not relate to the purely internal commerce of a State, but impliedly, at least, connect themselves with the commerce of the world, because in their performance the laws of nations on the high seas may be involved, and the United States compelled to respond.

Having found ample authority for the act as it now stands in the commerce clause of the Constitution, it is unnecessary to consider whether it is within the judicial power of the United States over cases of admiralty and maritime jurisdiction.

*Judgment affirmed.*