# THE ABBY DODGE.[1]

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF FLORIDA.

No. 41.　Argued November 6, 7, 1911.—Decided February 19, 1912.

Each State owns the beds of all tide waters within its jurisdiction unless they have been granted away; also the tide waters themselves and the fish in them so far as they are capable of ownership while running. *McCready* v. *Virginia*, 94 U. S. 391.

Congress has no control over sponges growing on the land beneath tide water within the jurisdiction of a State.

Where two interpretations of a statute are admissible, one of which makes the statute constitutional and the other unconstitutional, the former must be adopted. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366, 407.

The act of June 20, 1906, 34 Stat. 313, c. 3442, regulating the landing of sponges at ports of the United States, relates only to sponges taken outside of the territory of any State.

The power of Congress over foreign commerce is complete; no one has a vested right to carry on foreign commerce with the United States. *Buttfield* v. *Stranahan*, 192 U. S. 470.

Congress can, by exertion of its power to regulate foreign commerce,

---

[1] The docket title of this case is The vessel "Abby Dodge," A. Kalimeris, Claimant, Appellant, v. The United States.

forbid the importation of sponges gathered under conditions expressed in the act of June 20, 1906.

Where the act of Congress, under which forfeiture is sought, does not apply to territorial waters, the libel must aver that the acts were done outside of the territorial limits of any State.

When Congress, under its power to regulate foreign commerce, prohibits the importation of certain merchandise, it may cast on the one seeking to bring merchandise in the burden of establishing that it is exempt from the operation of the statute.

Under the circumstances of this case it is proper to allow the Government to amend the libel to present a case within the statute as construed in this opinion. *The Mary Ann,* 8 Wheat. 389.

THE facts, which involve the constitutionality and construction of the act of Congress of June 20, 1906, relating to landing of sponges in ports of the United States, are stated in the opinion.

*Mr. Edward R. Gunby,* for appellant:

Congress had no power under the Federal Constitution to pass the act of June 20, 1906. *Marbury* v. *Madison,* 1 Cranch, 137.

Under the wording of the act, sponges are prohibited from being landed at any port of the United States, even if taken within the waters of a State, and no element whatever of interstate or foreign commerce is required to enter into the act in order to make it a violation of law.

If the landing of an ordinary article of commerce is commerce within the meaning of the law when commerce is confined within the limits of a single State, Congress has no power to regulate or control it. *The Daniel Ball,* 10 Wall. 557; *The Bright Star,* Fed. Cases, No. 1880; *King* v. *The Am. Trans. Co.,* Fed. Cases, No. 7787; *United States* v. *New Bedford Bridge,* Fed. Cases, No. 15,867; *United States* v. *Morrison,* Fed. Cases, No. 15,465; *Sinnot* v. *Davenport,* 22 How. 227.

Even if the acts controlled and regulated by the act of Congress are matters of interstate commerce, if the same

are so blended with intrastate commerce that the two are inseparable, the act of Congress would be unconstitutional. *Howard* v. *Ill. Cent. R. R. Co.*, 207 U. S. 463; *Sears* v. *Warren*, 36 Indiana, 267.

The people of the United States, as distinguished from the people of the several States, have no common property in wild animals, oysters, fish, etc., within the boundaries of the several States, which will give them as citizens of the United States the right to legislate for the preservation of such property within the limits of the several States. The right to legislate on this subject being based upon the common ownership of the property, the several States have this authority when they are erected; but neither the States nor the United States have this authority over the waters of the high seas outside the limits of the several States.

While there are no decisions in relation to the control of the sponge industry and the catching of sponges, decisions upon the right of the States to legislate in regard to oysters are so nearly parallel as to practically control the same rights in regard to sponges. The right of the State to absolutely regulate the oyster industry has been clearly recognized. *Lee* v. *State of New Jersey*, 207 U. S. 67; *McReady* v. *Virginia*, 94 U. S. 391; *Louisiana* v. *Mississippi*, 202 U. S. 1; *Smith* v. *Maryland*, 18 How. 71.

As to the ownership, sovereignty and control of the tide water and the right to control the fishing therein, see *Manchester* v. *Massachusetts*, 139 U. S. 240; *Lawton* v. *Steele*, 152 U. S. 133; *Martin* v. *Waddell*, 16 Pet. 367; *Pollard* v. *Hagan*, 3 How. 212; *Illinois* v. *Ill. Cent. R. R. Co.*, 146 U. S. 387; *Wharton* v. *Wise*, 153 U. S. 155; *Mann* v. *De Coma Land Co.*, 153 U. S. 273; *McCready* v. *Virginia*, 94 U. S. 391; *Hardin* v. *Jordan*, 140 U. S. 371; *Shively* v. *Bowlby*, 152 U. S. 1.

By the act of March 3, 1845, Florida was admitted into the Union on equal footing with the original States in all

respects whatsoever. *Florida* v. *Black River Phosphate Co.*, 32 Florida, 83, 94.

Under Art I, Florida Const. the boundaries of the State are defined as being three leagues from shore, in the Gulf of Mexico. So the State has control over the sponge bars and beds in the Gulf of Mexico and Straits of Florida from the shore out to, and coextensive with, the state limits so defined. *United States* v. *Bevans*, 3 Wheat. 336.

As to the right of the several States to control the taking of fish and game within the limits of their territory, the following decisions among the state cases are to the same effect: *Alabama* v. *Harred* (Ala.), 15 L. R. A. 761; *Waverly* v. *White* (Va.), 45 L. R. A. 227; *People* v. *Truckee Lumber Co.* (Cal.), 39 L. R. A. 581 and note; *Commonwealth* v. *Hilton* (Mass.), 45 L. R. A. 475; *State* v. *Lewis* (Ind.), 20 L. R. A. 52; *Geer* v. *Connecticut*, 161 U. S. 519; *New York* v. *Hesterberg*, 211 U. S. 31.

On the question of the power to control the taking of sponges, fish, and oysters outside of the territorial limits of the State or United States there are no decisions, but see those in relation to the seal industry in Behring Sea, *In re Cooper*, 143 U. S. 474; *Nor. Am. Commercial Co.* v. *United States*, 171 U. S. 110; *La Ninfa* v. *United States*, 75 Fed. Rep. 513, under which it appears that Congress has neither the power to prohibit the landing or sale of an ordinary article of commerce within the limits of a State, nor has it the power to control the taking of sponges, either within the waters of a State or upon the high seas.

*The Solicitor General,* with whom *Mr. Charles E. Mc-Nabb, Assistant Attorney,* was on the brief, for the United States:

Whether the act of Congress in question is unconstitutional as an invasion of the reserved power of the State is a question not presented by this record, inasmuch

as it is not shown that any of the sponges landed from the *Abby Dodge* were taken within the boundaries of the State. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107–177.

The United States has undoubted right alike in virtue of its power to regulate foreign commerce and as an exercise of its inherent powers of national sovereignty to regulate the use of fisheries near its shores and outside the boundaries of the States, so far as concerns operations by its own people or to or from its own shores. *Lord* v. *Steamship Co.*, 102 U. S. 541; *Chinese Exclusion Case*, 130 U. S. 581; *Fong Yue Ting* v. *United States*, 149 U. S. 698; *Lem Moon Sing* v. *United States*, 158 U. S. 538; *Nor. Am. Commercial Co.* v. *United States*, 171 U. S. 110; *Buttfield* v. *Stranahan*, 192 U. S. 470; *Oceanic Steam Co.* v. *Stranahan*, 214 U. S. 320.

Conservation of these fisheries concerns the users of sponges throughout the United States. Florida certainly cannot protect them, and unless the United States does so they may be utterly destroyed.

American fisheries have been regulated by law for more than a century. See act of February 18, 1793, 1 Stat. 305, 307, ch. 8. The laws in force in 1873, when the statutes were revised, appear under Titles 50 and 51; see §§ 4321, 4393, for regulations as to whale, mackerel, and cod. Those statutes have been construed by the courts without question as to the power of Congress to enact such laws. *The Nymph*, 1 Ware, 257; 18 Fed. Cas. 509; *United States* v. *The Davis*, 1 Cliff. 523; 27 Fed. Cas. 454; *United States* v. *The Reindeer*, 14 Law Rep. 235; 27 Fed. Cas. 758; and see act of February 28, 1887, 24 Stat. 434, ch. 288; April 6, 1894, 28 Stat. 52, ch. 57; June 5, 1894, 28 Stat. 85, ch. 91; December 29, 1897, 30 Stat. 226, ch. 3. See also *Nor. Am. Commercial Co.* v. *United States*, 171 U. S. 110, 134; Act of June 30, 1906, 34 Stat. 768, ch. 3915.

If the foregoing laws are constitutional, the one in question is. The power to regulate commerce in sponges

gathered outside the territorial waters of States must be lodged somewhere. It cannot be nonexistent. Obviously, it is not in the States; therefore it must be in the Federal Government.

"Commerce," in the grant of power to Congress, comprehends external relations of every nature. 2 Madison Papers, 859; *Cooley* v. *Board of Wardens*, 12 How. 299, 319; *Henderson* v. *Mayor*, 92 U. S. 259, 272.

For other cases presenting, as in this case, conditions beyond state control or regulation and involving consideration and application of both constitutional and international law, see *Chinese Exclusion Case*, 130 U. S. 581, 603, 609; *Fong Yue Ting* v. *United States*, 149 U. S. 698, 711; *Lem Moon Sing* v. *United States*, 158 U. S. 538, 543; *Turner* v. *Williams*, 194 U. S. 279, 290; *Buttfield* v. *Stranahan*, 192 U. S. 470, 492, 493; *Oceanic Steam Co.* v. *Stranahan*, 214 U. S. 320, 334, 335; *Lord* v. *Steamship Co.*, 102 U. S. 541.

The conventional limitation of national authority over the high seas to within three miles of the shore is applicable only as between nations. The people of the United States have an interest in sea fisheries, and an especial interest in those near their own shores. The United States is asserting nothing here against the sovereignty of any other nation. It simply closes the ports of the United States against everybody engaged in operations which it holds to be needlessly wasteful and destructive in their methods.

There is nothing new in this. It is not new in the legislation of the United States. It is not new in the legislation of other nations. Examples, indeed, are numerous. Russia, Great Britain, New Zealand, Sweden, Norway, Germany, and Holland have all adopted legislative regulations, applicable to their own subjects, for the protection of seals of various species. Other instances are the British "Sea Fisheries Act" of 1868 (31 and 32 Vict., ch. 45, § 47);

the Scotch "Herring Fishery Act" of 1889 (52 and 53 Vict., ch. 23); ordinances of Ceylon and statutes of Australasia regulating pearl fisheries; laws of Italy as to coral fishing, and those of Norway establishing a close season for whales. See the treaty recently concluded between Russia, Great Britain, Japan and the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

By libel of the vessel *Abby Dodge*, either her forfeiture or the enforcement of a money penalty was sought because of an alleged violation of the act of June 20, 1906, 34 Stat. 313, ch. 3442, entitled, "An Act To regulate the landing, delivery, cure, and sale of sponges." The specific violation alleged was "That there was at the port of Tarpon Springs, within the Southern District of Florida, on the 28th day of September, A. D. 1908, landed from the said vessel, *Abby Dodge*, 1,229 bunches of sponges, taken by means of diving and apparatus from the waters of the Gulf of Mexico and the Straits of Florida; . . . at a time other than between October 1st and May 1st of any year, and at a time subsequent to May 1st, A. D. 1907."

The owner of the vessel appeared and filed exceptions which, although urged in various forms, were all, as stated by counsel, "directed to and based upon the alleged unconstitutionality of the said act of June 20, 1906." The exceptions were overruled, and, the claimant declining further to plead, a decree was entered assessing a fine of $100 against the vessel. This appeal was then taken.

For the purposes of the questions upon which this case turns we need only consider the first section of the act of June 20, 1906, which is as follows:

"That from and after May first, anno Domini nineteen hundred and seven, it shall be unlawful to land, deliver, cure, or offer for sale at any port or place in the United States any sponges taken by means of diving or diving

apparatus from the waters of the Gulf of Mexico or Straits of Florida: *Provided,* That sponges taken or gathered by such process between October first and May first of each year in a greater depth of water than fifty feet shall not be subject to the provisions of this Act: *And provided further,* That no sponges taken from said waters shall be landed, delivered, cured, or offered for sale at any port or place in the United States of a smaller size than four inches in diameter.".

Broadly the act, it is insisted, is repugnant to the Constitution because, in one aspect, it deals with a matter exclusively within the authority of the States, and in another because, irrespective of the question of state authority, the statute regulates a subject not within the national grasp and hence not embraced within the legislative power of Congress. The first proceeds upon the assumption that the act regulates the taking or gathering of sponges attached to the land under water within the territorial limits of the State of Florida and it may be of other States bordering on the Gulf of Mexico, prohibits internal commerce in sponges so taken or gathered, and is therefore plainly an unauthorized exercise of power by Congress. The second is based on the theory that even if the act be construed as concerned only with sponges taken or gathered from land under water outside of the jurisdiction of any State, then its provisions are in excess of the power of Congress, because, under such hypothesis, the act can only apply to sponges taken from the bed of the ocean, which the National Government has no power to deal with.

We briefly consider the two propositions. If the premise upon which the first rests be correct, that is to say, the assumption that the act when rightly construed applies to sponges taken or gathered from land under water within the territorial limits of the State of Florida or other States, the repugnancy of the act to the Constitution would plainly be established by the decisions of this court. In

*McCready* v. *Virginia*, 94 U. S. 391, the question for de-
cision was whether the State of Virginia had such exclusive
authority over the planting and gathering of oysters upon
the soil in tide waters within the territorial limits of the
State as not only to give the State the power to control
that subject, but to confer the right to exclude the citizens
of other States from participating. In upholding a statute
exerting such powers the doctrine was declared (p. 394) to
be as follows: "The principle has long been settled in this
court, that each State owns the beds of all tide-waters
within its jurisdiction, unless they have been granted
away. *Pollard's Lessee* v. *Hagan*, 3 How. 212; *Smith* v.
*Maryland*, 18 How. 74; *Munford* v. *Wardwell*, 6 Wall. 486;
*Weber* v. *Harbor Commissioners*, 18 id. 66. In like manner,
the States own the tide-waters themselves, and the fish
in them, so far as they are capable of ownership while
running. For this purpose the State represents its people,
and the ownership is that of the people in their united
sovereignty. *Martin* v. *Waddell*, 16 Pet. 410. . . .
The right which the people of the State thus acquire comes
not from their citizenship alone, but from their citizenship
and property combined. It is, in fact, a property right,
and not a mere privilege or immunity of citizenship."
True it is that the rights which were thus held to exist in
the States were declared to be "subject to the paramount
right of navigation, the regulation of which, in respect to
foreign and interstate commerce has been granted to the
United States," but with that dominant right we are not
here concerned.

Again, in *Manchester* v. *Massachusetts*, 139 U. S. 240,
in upholding a statute of the State of Massachusetts reg-
ulating the taking of Menhaden in Buzzard's Bay, the
doctrine of the case just cited was expressly reiterated.
True, further in that case, probably having in mind the
declaration made in the opinion in the *McCready case*,
that fish running within the tide waters of the several

States were subject to state ownership "so far as they are capable of ownership while so running," the question was reserved as to whether or not Congress would have the right to control the Menhaden fisheries. But here also for the reason that the question arising relates only to sponges growing on the soil covered by water we are not concerned with the subject of running fish and the extent of state and national power over such subject.

The obvious correctness of the deduction which the proposition embodies that the statute is repugnant to the Constitution when applied to sponges taken or gathered within state territorial limits, however, establishes the want of merit in the contention as a whole. In other words, the premise that the statute is to be construed as applying to sponges taken within the territorial jurisdiction of a State is demonstrated to be unfounded by the deduction of unconstitutionality to which such premise inevitably and plainly leads. This follows because of the elementary rule of construction that where two interpretations of a statute are in reason admissible, one of which creates a repugnancy to the Constitution and the other avoids such repugnancy, the one which makes the statute harmonize with the Constitution must be adopted. *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366 407, and cases cited.

While it is true that it would be possible to interpret the statute as applying to sponges taken in local waters, it is equally certain that it is susceptible of being confined to sponges taken outside of such waters. In view of the clear distinction between state and national power on the subject, long settled at the time the act was passed and the rule of construction just stated, we are of opinion that its provisions must be construed as alone applicable to the subject within the authority of Congress to regulate; and, therefore, be held not to embrace that which was not within such power:

In substance the argument is that this case does not come within the rule, since it is insisted to confine the statute to sponges taken or gathered outside of state territorial limits would also, although for a different reason, cause it to be plainly unconstitutional. This but assumes that the second proposition, denying all power in Congress to exert authority in respect to the landing of sponges taken outside of the territorial jurisdiction of a State is well founded, and we come therefore to the consideration of that proposition. For the sake of brevity we do not stop to review the general considerations which the proposition involves for the purpose of demonstrating its inherent inaccuracy, or to point out its conflict with the law of nations, and its inconsistency with the practices of the Government from the beginning. We thus refrain since there is a simpler and yet more comprehensive point of view disposing of the whole subject.

Undoubtedly, (*Lord* v. *Steamship Company*, 102 U. S. 541), whether the *Abby Dodge* was a vessel of the United States or of a foreign nation, even although it be conceded that she was solely engaged in taking or gathering sponges in the waters which by the law of nations would be regarded as the common property of all and was transporting the sponges so gathered to the United States, the vessel was engaged in foreign commerce, and was therefore amenable to the regulating power of Congress over that subject. This being not open to discussion, the want of merit of the contention is shown, since the practices from the beginning, sanctioned by the decisions of this court, establish that Congress by an exertion of its power to regulate foreign commerce has the authority to forbid merchandise carried in such commerce from entering the United States. *Buttfield* v. *Stranahan*, 192 U. S. 470, 492–493, and authorities there collected. Indeed, as pointed out in the *Buttfield Case*, so complete is the authority of Congress over the subject that no one can be said to have a vested

right to carry on foreign commerce with the United States.

Although, for the reason stated, we think the statute, limited by the construction which we have given it, is not repugnant to the Constitution, we are nevertheless of opinion that as thus construed the averments of the libel were not sufficient to authorize the imposition of the penalty which the court below decreed against the vessel. As by the interpretation which we have given the statute its operation is confined to the landing of sponges taken outside of the territorial limits of a State, and the libel does not so charge—that is, its averments do not negative the fact that the sponges may have been taken from waters within the territorial limits of a State—it follows that the libel failed to charge an element essential to be alleged and proved, in order to establish a violation of the statute. *United States* v. *Britton,* 107 U. S. 655, 661–662, and cases cited.

As we deem that it has no relevancy to the power of Congress to deal with a subject not within its constitutional authority, that is, the taking of sponges within the exclusive jurisdiction of a State, we have not considered it necessary to refer to a statement made by the district judge concerning legislation of the State of Florida making it unlawful to gather or catch sponges "in and upon any of the grounds known as sponging grounds along the coast of Florida from Pensacola to Cape Florida by diving either with or without a diving suit and armor." Equally, also, have we refrained from attempting to reconcile the enactment of this state law with some reference made by the Government in argument to certain statements in testimony given before a committee of the House when the act which is before us was in process of adoption, to the effect that there were no sponge beds within the jurisdiction of Florida, because "the sponge beds were from fifteen to sixty and sixty-five miles out."

In view of the paramount authority of Congress over foreign commerce, through abundance of precaution we say that nothing in this opinion implies a want of power in Congress, when exerting its absolute authority to prohibit the bringing of merchandise, the subject of such commerce, into the United States, to cast upon one seeking to bring in the merchandise, the burden, if an exemption from the operation of the statute is claimed, of establishing a right to the exemption.

While it necessarily follows from what we have said. that the decree must be reversed, we are of opinion that under the circumstances of the case 'it should be accompanied with directions to permit the Government, if desired, to amend the libel so as to present a case within the statute as construed. *The Mary Ann*, 8 Wheat. 380.

*Reversed.*