**MILLIKEN et al. v. STONE, Atty. Gen., et al.**

(Circuit Court of Appeals, Second Circuit. January 10, 1927.)

No. 114.

1. Injunction ⟨⟩75—Injunctive relief, requiring officers to enforce liquor laws, will not be granted, except to protect property rights against irremediable injuries (Const. Amend. 18; National Prohibition Act [Comp. St. § 10138¼ et seq.]).

Court of equity will not enjoin United States officers from giving credence to Treaty with Great Britain of May 22, 1924 (43 Stat. 1761), permitting vessels to carry liquor under seal, and require them to enforce Const. Amend. 18, and National Prohibition Act (Comp. St. § 10138¼ et seq.), unless it is necessary in order to protect property rights against injuries otherwise irremediable.

**2. Equity ⊙⟹28—Court of equity has no jurisdiction over crimes and misdemeanors.**

Court of equity has no jurisdiction over prosecution and punishment of crimes and misdemeanors.

**3. Injunction ⊙⟹118(4)—Bill to enjoin enforcing treaty authorizing British vessels to transport liquor under seal held insufficient, in failing to show damage to property rights (Const. Amend. 18).**

Bill of complaint seeking to enjoin United States officials from enforcing terms of Treaty between United States and Great Britain dated May 22, 1924 (43 Stat. 1761), on ground that it was repugnant to the Eighteenth Amendment of the Constitution, as permitting British vessels to transport liquor on territorial waters while under seal, *held* insufficient as not showing that plaintiffs' property rights had been damaged thereby.

**4. Shipping ⊙⟹3—Congress may regulate domestic merchant ships on high seas or in foreign waters.**

Congress has power to regulate conduct of domestic merchant ships while on high seas or in foreign waters.

**5. Injunction ⊙⟹118(4)—Mere allegation of irreparable injury does not warrant injunction.**

Mere allegation of irreparable injury will not suffice to warrant injunction by court of equity, and facts must appear on which allegation was predicated, in order that court may be satisfied of nature of injury.

Appeal from the District Court of the United States for the Southern District of New York.

Suit for injunctive relief by John F. Milliken and others against Harlan F. Stone, as Attorney General, and others. Decree for defendants (7 F.[2d] 397), and complainants appeal. Affirmed.

Silas B. Axtell, of New York City (Charles A. Ellis, of New York City, of counsel), for appellants.

Lord, Day & Lord, of New York City (Lucius H. Beers, Allen Evarts Foster, and John Vincent, all of New York City, of counsel), for appellees Cunard S. S. Co., Rostron, and Irvine.

Emory R. Buckner, U. S. Atty., of New York City (Herman T. Stichman, Asst. U. S. Atty., of New York City, of counsel), for other appellees.

Before MANTON, and HAND, Circuit Judges, and CAMPBELL, District Judge.

MANTON, Circuit Judge. Appellants sue in equity seeking a decree declaring the treaty between the United States of America and Great Britain dated May 22, 1924 (43 Stat. 1761), repugnant to the Constitution and enjoining the officials of the United States named from adhering to and enforcing the terms of the treaty. The parties plaintiff are Milliken, a citizen, who sues individually as a mariner, and as secretary of the Neptune Association of Masters and Mates of Ocean and Coastwise Steam Vessels, Inc., and Smith, a stockholder of a steamship line and of whom it is alleged, was an individual owner of steamships. The defendants are the Attorney General of the United States, the United States attorney for the Southern District of New York, the United States Commissioner of Internal Revenue, the United States collector of internal revenue for the Third district, the Cunard Steamship Company, a British corporation doing business in New York, and Irvine and Rostron, captains of trans-Atlantic passenger and freight carrying ships.

The bill of complaint sets forth claims that British vessels of the Cunard Line may, by virtue of the terms of the treaty, transport liquor in our territorial waters while under seal, and that this has an attraction for passenger traffic to such vessels to the detriment of the ships of American registry. It is alleged that the profits to the American lines are therefore interfered with, and that Smith's profits as a stockholder of one line are less; also that the opportunity of employment of Milliken and members of his Neptune Association are affected by reason of their inability to secure as much employment for themselves because American vessels are being transferred to foreign registry. The officers of the United States joined are sought to be enjoined "from * * * giving credence and recognition to the treaty" and from "failing, refusing and/or neglecting to enforce the said amendment and the National Prohibition Act against the Cunard Steamship Company, Limited." The United States attorney for the Southern district of New York is sought to be "enjoined from, in any way or manner, by reason of the apparent force of said treaty, failing, refusing, and/or neglecting to enforce the said amendment and the National Prohibition Act against the Cunard Steamship Company," and from "failing, refusing and/or neglecting to institute suits under said Act to abate and/or enjoin liquor nuisances * * * by said Cunard Steamship Company, * * * and failing, refusing and/or neglecting to prosecute as offenders * * *" the company and its masters. As against the other officers, relief is sought from their failure in refusing "to swear out warrants for the apprehension of offenders on vessels" of the Cunard Company.

The Eighteenth Amendment to the Constitution provides that, after one year from the ratification thereof, the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States and all territories subject to the jurisdiction thereof, for beverage purposes, is prohibited, and by section 2 Congress and the several states have concurrent power to enforce this article by appropriate legislation. The provision of the treaty which appellants contend conflicts with the Eighteenth Amendment reads:

"No penalty or forfeiture under the laws of the United States shall be applicable or attach to alcoholic liquors or to vessels or persons by reason of the carriage of such liquors, when such liquors are listed as sea stores or cargo destined for a port foreign to the United States, its territories or possessions on board British vessels voyaging to or from ports of the United States, or its territories or possessions or passing through the territorial waters thereof, and such carriage shall be as now provided by law with respect to the transit of such liquors through the Panama Canal, provided that such liquors shall be kept under seal continuously while the vessel on which they are carried remains within said territorial waters and that no part of such liquors shall at any time or place be unladen within the United States, its territories or possessions." Article 3.

[1-3] A court of equity will not give injunctive relief of this character, unless it be to protect property rights against injuries otherwise irremediable. Cavanaugh v. Looney, Atty. Gen., 248 U. S. 453, 39 S. Ct. 142, 63 L. Ed. 354; International News Service v. Assoc. Press, 248 U. S. 215, 39 S. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293. And a court of equity has no jurisdiction over the prosecution, the punishment, or the pardon of crimes and misdemeanors. In re Debs, 158 U. S. 564, 15 S. Ct. 900, 39 L. Ed. 1092. The protection accorded the appellants must be limited to their rights of property. The averments of this bill fail to show the existence of any proprietary right in the appellants suffering an irremediable injury. Milliken, as a mariner and secretary of the Neptune Association, is not alleged to be seeking employment as a seafaring man. There are no pertinent allegations that the Neptune Association is injured, if the treaty be held to be in contravention of the Constitution. No instances are cited wherein American vessels have been transferred to other registry. There is no allegation of fact to the effect that the mariners who are supposedly deprived of employment as a result of the treaty may not find employment on British or other ships. Indeed, there is no allegation of fact concerning damage to any proprietary interest of the association or its members.

The claim that during the last few years American vessels have undergone adverse competition, or have been competing at disadvantage with British ships, is stated in a complaint which was verified four months after the effective date of the treaty. There is no convincing statement of any substantial or positive injury, supported by allegations of fact which would appeal to a court of equity. It is alleged of Smith that he is a stockholder of the Atlantic, Gulf & West Indies Steamship Line, and is himself the owner and operator of a large number of vessels engaged in passenger trade. There is no allegation as to these ships or the ships owned by the Atlantic, Gulf & West Indies Line, which are operated between ports of this country and Europe in competition with ships of the Cunard Line. Nor is there an allegation that there is a decreased popularity or demand for passage on vessels of Smith's interest, nor of facts in support of the claim that, because of the liquor on foreign ships, Smith has suffered. In fact, the provision of the treaty referred to allows the transportation of liquor in the ships of the Cunard Line in the territorial waters of the United States only while under seal. When these vessels reach the high seas, they may sell their liquor to passengers. They might have done the same, had they stored their liquor outside the territorial limits coming in, and retaking the same liquor supply on their way out. No apparent disadvantage is gained by merely transporting liquors under seal in and out of the port. Supply ships might meet the vessels four leagues from shore, and this taking off and replenishing the supply would result in the same attraction, if it be an attraction, to the Cunard Line.

[4] The effect of the treaty may not, therefore, be said to be the proximate cause of the popularity claimed by the appellants for the British vessels because of the sale of liquor. The Supreme Court said in Cunard S. S. Co. v. Mellon, 262 U. S. 100, 128, 43 S. Ct. 504, 509 (67 L. Ed. 894, 27 A. L. R. 1306):

"Examining the act [Comp. St. § 10138¼ et seq.] as a whole, we think it shows very plainly, first, that it is intended to be operative throughout the territorial limits of the United States, with the single excep-

tion stated in the Canal Zone provision [section 10138¾s]; secondly, that it is not intended to apply to domestic vessels when outside the territorial waters of the United States; and, thirdly, that it is intended to apply to all merchant vessels, whether foreign or domestic, when within those waters, save as the Panama Canal Zone exception provides otherwise.

"In so saying we do not mean to imply that Congress is without power to regulate the conduct of domestic merchant ships when on the high seas, or to exert such control over them when in foreign waters as may be affirmatively or tacitly permitted by the territorial sovereign; for it long has been settled that Congress does have such power over them. Lord v. Steamship Co., 102 U. S. 541, 26 L. Ed. 224; The Abby Dodge, 223 U. S. 166, 176, 32 S. Ct. 310, 56 L. Ed. 390. But we do mean that the National Prohibition Act discloses that it is intended only to enforce the Eighteenth Amendment and limits its field of operation, like that of the amendment, to the territorial limits of the United States."

[5] This alleged decrease in passenger traffic on American vessels in favor of the British vessels cannot be attributed to the operation of the treaty here put in question. Mere allegation of irreparable injury will not suffice to warrant an injunction. Facts must appear on which the allegation is predicated, in order that the court may be satisfied of the nature of the injury. Argumentative allegations or inferences from facts stated are insufficient to meet the requirements of the rule. The authorities referred to by the appellants do not support their claims.

Missouri v. Holland, 252 U. S. 416, 40 S. Ct. 382, 64 L. Ed. 641, 11 A. L. R. 984, was a case involving an application of a true restrainer. There it appeared that a person, indicted for violating a federal statute passed in support of the Migratory Bird Treaty Act (40 Stat. 755 [Comp. St. §§ 8837a–8837m]), demurred to the indictment on the ground that it was unconstitutional. The state of Missouri filed a bill in equity seeking to restrain the United States game warden from enforcing the act, and the United States moved to dismiss the bill. The demurrer was overruled, and the bill dismissed, and the Supreme Court affirmed, so far as the bill in equity was concerned. The restraint there was upon the affirmative action of the game warden from making arrests and instituting prosecutions, whereas here it is sought to command the government officials to arrest and prosecute.

Smith v. Kansas City, 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577, and Davis v. Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325, involved suits to restrain an affirmative action under statutes of the United States. In Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, an injunction was sought to restrain the affirmative action of state officials by way of arrest and prosecution under a state statute claimed to be unconstitutional. The plaintiffs there were shown to have a direct proprietary interest.

We need not and do not pass upon the alleged conflict of the treaty with the Constitution, for we are satisfied that the appellants have not presented by their pleading sufficient allegations showing that they or their proprietary rights have been damaged, so as to warrant the inquiry.

Decree affirmed.