### THE WINNIE.

### GOTTLIEB v. UNITED STATES.
### No. 4899.

Circuit Court of Appeals, Third Circuit.
June 16, 1933.

See, also, 61 F.(2d) 516.

Louis Halle, of New York City, and Benjamin M. Golder, of Philadelphia, Pa., for appellant.

Edward W. Wells, U. S. Atty., and Howard Benton Lewis, Asst. U. S. Atty., both of Philadelphia, Pa.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

PER CURIAM.

This is an appeal from a decree of the District Court forfeiting the gas screw Winnie because she proceeded on a foreign voyage without first giving up her enrollment and license to the collector of the district comprehending the port from which she proceeded and where she was registered, in violation of section 4337, R. S. U. S. (46 USCA § 278), and. for being employed in a trade other than that for which she was licensed in violation of section 4377, R. S. U. S. (46 USCA § 325).

The evidence entirely fails to sustain the charge that the Winnie proceeded on a foreign voyage. without giving up her enrollment and license. This charge is based on the fact that the Winnie proceeded from Wilmington, Del., on the morning of October 14, 1931, and was sighted outbound, and that she was later observed 40 miles southeast of Chesapeake Lightship lying alongside of and made fast to the British ship Nan and Edna.

The fact that the Winnie put out to sea is without significance. Pleasure boats of all descriptions are "out-bound" day by day and go up and down the coast on the high seas, but this does not constitute a "foreign voyage" within the meaning of the statute.

As Judge Learned Hand in The Alex Clark (D. C.) 294 F. 904, 905, in speaking of a vessel, said: "She may keep as far clear of the shore as she pleases, so long as she is passing from one port of the United States to another," without incurring the penalty provided in section 4337 of the Revised Statutes for proceeding on a "foreign voyage" without giving up her enrollment and license to the collector.

A foreign port within the meaning of this statute is not any place on the high seas outside of the territorial limits of the United States. A foreign port is a port or place exclusively within the sovereignty of a foreign nation. The Eliza, Fed. Cas. No. 4,346; The Esther M. Rendle (C. C. A.) 7 F.(2d) 545. A voyage to such a port or place is a foreign voyage. Whatever else it may be, we do not think mere contact with a vessel of a foreign registry outside the territorial waters of the United States in itself constitutes a "foreign voyage" within the meaning of the statute in question. Congress has power so to declare, Lord v. Steamship Co., 102 U. S. 541, 26 L. Ed. 224; The Abby Dodge v. United States, 223 U. S. 166, 176, 32 S. Ct. 310, 56 L. Ed. 390; Cunard S. S. Co. v. Mellon, 262 U. S. 100, 129, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306, but it has not done so in this statute and so to hold would be judicial legislation.

The second question is whether or not the Winnie engaged or was employed in any other trade than that for which she was licensed.

She was licensed exclusively as a pleasure vessel, and as such was forbidden "to transport merchandise, or carry passengers for hire, or engage in any unlawful trade."

On the morning of October 14, 1931, the Coast Guard destroyer Hunt sighted the Winnie lying alongside of and made fast to the British ship Nan and Edna about 40 miles southeast of Chesapeake Lightship. The Hunt increased her speed, and thereup-

on the Winnie broke away, and she and the Nan and Edna started in opposite directions. The Hunt pursued the Winnie, at a speed of 27 knots an hour, and fired five or six shots from 4-inch shells, which burst ahead of the Winnie. The Winnie did not stop, but increased her speed to 35 knots. During this chase the Winnie was seen throwing overboard packages wrapped in burlap, 2 or 3 feet long and a foot wide, identical with those seen on the deck of the Nan and Edna and like those commonly seen and seized on rum vessels. "Package after package of this character was being thrown into the sea from the stern of the Winnie."

The Winnie was running away from the Hunt, but the Coast Guard destroyer Upshur was seen in the distance, and the Hunt "radioed" her to intercept the Winnie. This she did with the aid of gun fire and brought her into port.

■ The learned trial judge found that the Winnie was a "rumrunner, designed, built, rigged, and fully manned and equipped to engage in the trade, if it may be called such, of violating the National Prohibition law. With legitimate trade or commerce, she had absolutely nothing to do." He thus found that she was not employed exclusively as a pleasure vessel, but was employed in another trade than that for which she was licensed, and so entered a decree, forfeiting her. We cannot say that he erred in so doing.

Pending the hearing in this case, application was made to the District Judge for the release of the Winnie on bond pursuant to section 938 of the Revised Statutes. This section provides that upon the prayer of the claimant to any vessel seized and prosecuted under any law respecting the enrolling and licensing of vessels, the court shall appoint three proper persons to appraise the vessel, who shall be sworn in open court or before a commissioner appointed by the District Court to administer oaths to appraisers, for the faithful discharge of their duty. If, on the return of the appraisement, the claimant, with one or more sureties, to be approved by the court, shall execute a bond to the United States for the payment of a sum equal to the sum at which the vessel is appraised, the court shall, by rule, order the vessel to be delivered to the claimant. If judgment passes in favor of the claimant, the court shall cause the bond to be canceled; but, if judgment passes against the claimant, and he does not within twenty days thereafter pay into the court, or the proper officer thereof, the amount of the appraised value of the vessel so condemned, with costs, judgment shall be granted on the bond, on motion in open court, without further delay. 28 USCA § 751.

■ The learned District Judge refused to release the vessel on the ground that it was discretionary with him, but in that he erred. This was a prosecution respecting the enrolling and licensing of the Winnie. The provision for the release of the vessel under this section is mandatory, and, when application was properly made, the release of the vessel under adequate bond was likewise mandatory. United States v. Davidson (C. C. A.) 50 F.(2d) 517; Jackman v. United States (C. C. A.) 56 F.(2d) 358.

The decree of the District Court ordering the forfeiture of the vessel is affirmed, subject, however, to the right of the claimant to apply to that court for release of the vessel on giving a good and sufficient bond.