**GANADERA INDUSTRIAL, S.A., Appellant,**

v.

**John R. BLOCK, Secretary of Agriculture, et al.**

No. 82–2366.

United States Court of Appeals, District of Columbia Circuit.

Argued May 31, 1983.

Decided Feb. 7, 1984.

As Amended Feb. 7, 1984.

Michael M. Eaton, Washington, D.C., with whom William Bruce Harper, Jr., Miami, Fla., was on the brief, for appellant.

Susan Sleater, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Washington, D.C. (at the time the brief was filed), and Michael F. Hertz, Atty. Dept. of Justice, Washington, D.C., were on the brief, for appellees.

Before MIKVA, GINSBURG and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Since 1967, Ganadera Industrial, S.A. (hereinafter "GISA") has exported beef and beef products to the United States from its plant in Northern Costa Rica, known as Establishment # 10. On October 1, 1982, Dr. Donald L. Houston, the authorized delegate of the Secretary of Agriculture, withdrew GISA's privilege to import into the United States. Dr. Houston's action was taken pursuant to regulations implementing the Federal Meat Inspection Act. On October 8, 1982, GISA brought an action in district court to enjoin the Secretary from interfering with the importation of its meat and meat products. GISA maintained that the Secretary exceeded his authority under the Federal Meat Inspection Act and applicable regulations, acted arbitrarily and capriciously, and also violated appellant's right to advance notice and a hearing under the due process clause and under section 401 of the Act, 21 U.S.C. § 671 (1982). The district court denied a temporary restraining order, granted an expedited trial on the merits, and gave judgment for the Secretary. 556 F.Supp. 354. We affirm.

## I.

The United States Department of Agriculture ("USDA") does not inspect all imported meat put on the market, as it does with domestic products. Rather, the USDA inspects imported meat on a spot-check sampling basis at the port of entry. On occasion, it also sends its representatives to inspect foreign plants. Primarily, however, the USDA depends upon the relevant foreign government to guarantee the wholesomeness of its products. Where a question arises as to a product's safety or the integrity of a particular plant, the USDA's representatives discuss their reservations at a diplomatic level with representatives of the foreign government.

For some time prior to the action in question the Secretary of Agriculture had been concerned about the Costa Rican meat inspection program. In 1981 and early 1982, incidents involving adulteration, misbranding, and false certification had occurred in several plants, including GISA's plant. Inspectors found dirt in substitution for meat in boxes that originated in Establishment # 10. They also found counterfeit USDA import inspection stamps on containers of Costa Rican meat. These incidents led the United States to delist all meat and meat products coming from Costa Rica. After an extensive investigation by both the United States and Costa Rica, the United States, in April 1982, lifted the ban on importation from Costa Rica. GISA then resumed shipping beef to the United States and continued until sometime in June, the month when it traditionally stopped operations for the dry season.

In September, 1982, Dr. Houston decided that GISA should again be delisted. One factor leading to his decision was the indictment in Florida of Miguel Rodriguez, chairman of the board and controlling shareholder of GISA. The charges that the federal grand jury brought against Rodriguez included importation of adulterated meat and use of a counterfeit United States Department of Agriculture stamp. Although the meat involved had been imported through a Miami concern, it either originated in or was handled by Establishment # 10. Brief for the Appellees at 12; J.A. at 127. There was thus a clear link between Establishment # 10 and these serious violations of United States laws designed to prevent the importation of adulterated or misbranded meat. Prior to withdrawing the importation privilege, Dr. Houston expressed his concerns to the Costa Rican government. The Costa Rican government reported that it lacked the authority to take any action against Establishment # 10. Dr. Houston then informed GISA that its privilege to import would be withdrawn until such time as it removed Rodriguez from his management position and from control of GISA through a voting trust. Pending resolution of the criminal charges, Dr. Houston also required that a Costa Rican government overseer be placed full time in Establishment # 10. After the controlling shareholder of GISA complied with these conditions in mid-November, 1982, the Department of Agriculture lifted the import ban.

## II.

The appellees allege that this case is moot because GISA is presently permitted to import into the United States, "is not threatened with a ban, and seeks no further judicial relief on its own behalf." Brief for the Appellees at 15 (citations omitted). The appellees argue that there "is no longer any remedy for the Court to grant even if GISA could prevail." *Id.* at 19. We are unpersuaded that this case is moot. Even though GISA is currently allowed to import, it is suffering an ongoing harm. As a result of the conditions imposed by the Department of Agriculture, GISA must pay for an "intervenor" to supervise its operations. The Department's conditions also deprive GISA of any aid that Rodriguez might be able to render it. GISA has sued to have the delisting enjoined, and while it is true that GISA is now listed, it is also subject to conditions. These conditions would fall if GISA were to prevail in this litigation.

Appellees' other threshold contention—that the Secretary's action is one wholly committed to agency discretion—is

easily dismissed. The Administrative Procedure Act provides that the actions of each authority of the United States government are subject to judicial review except where review is prohibited by statute or where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2) (1982). Neither of these exceptions applies in this case. There is no showing of a legislative intent to foreclose judicial review. Nor does the Secretary's decision fall within the "very narrow exception" for action "committed to agency discretion." *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). This exception is not relevant where there is law to apply in reviewing the administrator's action. The Federal Meat Inspection Act of 1967, 21 U.S.C. § 601 *et seq.* (1982), and regulations made pursuant to it set forth standards such that the Secretary's discretion is not boundless.

### III.

Section 20 of the Federal Meat Inspection Act of 1967, 21 U.S.C. § 620 (1982), provides in part:

> (a) No carcasses, parts of carcasses, meat or meat food products ... shall be imported into the United States if such articles are adulterated or misbranded and unless they comply with all the inspection, building, construction standards, and all other provisions of this act and regulations issued thereunder applicable to such articles in commerce within the United States.

Regulation 9 C.F.R. § 327.2(a)(3) (1983), implementing this Act, provides in pertinent part:

> Notwithstanding certification by a foreign official, the Administrator may, at his discretion, terminate the eligibility of any foreign establishment for importation of its products into the United States if he has information that such establishment does not comply with the requirements listed in paragraphs (a)(2)(i) and (ii) of this section or if he cannot obtain current information concerning such establishment.

The general provision (h) of 9 C.F.R. § 327.2(a)(2)(ii) refers, *inter alia,* to the requirement of 21 U.S.C. § 602 (1982) that all meat be "wholesome, not adulterated, and properly marked, labeled, and packaged"; and to the requirements of 21 U.S.C. § 620(a) and (b), and 9 C.F.R. § 327.3(a) (1983) that *imported* products, specifically, shall not be misbranded or adulterated.

■ The appellant contends that in withdrawing its importation privileges the Secretary exceeded his authority under section 20 of the Federal Meat Inspection Act and the regulations. In GISA's view, the indictment of Rodriguez constituted the "primary, if not the sole, reason for the Administrator's action." Reply Brief for Appellant at 20. Neither the Act nor USDA regulations, GISA contends, authorize the delisting of a company on this basis, especially where, as here, the plant has been in compliance with all regulations and has an exemplary performance record both at the time of delisting and for at least six months prior to that time. *Id.* at 19. GISA maintains that the Act allows the USDA to delist a foreign plant only when that plant's products fail to meet a *specific provision* of the Act. Brief for Appellant at 26.

We find appellant's view to be unsupported. The legislative history strongly suggests that Congress intended that the Secretary err on the side of preventing importation in enforcing the standards of the Act. *See, e.g.,* 113 Cong.Rec. 33,878–79 (1967). By endowing the Secretary with this authority, Congress sought both to protect American consumers and to ensure equitable treatment for domestic producers. *Id.* In a larger sense, the inspection system for imported products, which is essentially the system that Congress contemplated in 1967, makes plain that GISA's interpretation of the legitimate bases for delisting a foreign plant is unduly restrictive. During the debate about the 1967 amendments to the Federal Meat Inspection Act, the Senate took for granted that federal inspectors would not inspect foreign plants directly. S.Rep. No. 799, 90th Cong., 1st Sess. 12

(1967), U.S.Code Cong. & Admin.News 1967, p. 2188. Rather, the Senators assumed that the USDA would rely heavily on assurances from foreign governments, together with sample checking by United States veterinary officers. *Id.;* 113 Cong.Rec. 33,876 (1967). Under this system a long time might elapse before the USDA discovered a specific practice of adulterating meat. A narrow interpretation of the Secretary's powers, such as the one GISA espouses, would eliminate the Secretary's ability to protect consumers from adulterated imported meat where no single piece of evidence would warrant delisting but where taken together the evidence raises serious doubts as to the products' wholesomeness. The realities of the situation thus require that the Secretary have power to bar importation where he has sufficient reason to doubt that the meat complies with the standards of the Act.[1] The statutory language will bear such an interpretation and the legislative history supports it.

■ Just as we reject GISA's contention that the Secretary exceeded his authority under the statute, so also we decline to accept appellant's similar argument as to the regulation. A court will accept the agency's interpretation of its regulation provided the interpretation "does not do violence to the language of the regulation itself." *Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Puerto Rico Maritime Shipping Authority v. Federal Maritime Commission,* 678 F.2d 327, 345 (D.C.Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 210, 74 L.Ed.2d 167 (1982). *Accord Taylor v. Department of the Army,* 684 F.2d 99, 104 (D.C.Cir.1982). Here we do not believe that the USDA's interpretation does violence to the language of the regulation.

■ Nor do we find that the Secretary's action was arbitrary and capricious. The record shows that Dr. Houston delisted GISA on the basis of three principal factors: (1) repeated prior instances of misbranding, adulterations, and false certification involving Costa Rican plants, including GISA; (2) the indictment of Rodriguez,

chairman of the board and controlling shareholder of GISA, on charges, *inter alia,* of importing unwholesome meat that either originated in or was handled by Establishment # 10 and use of a counterfeit USDA "stamped and passed" stamp; and (3) the Costa Rican government's statement that it lacked the authority to prevent GISA from exporting. We think that these facts brought the decision to withdraw GISA's importation privilege within Dr. Houston's discretion. His action in delisting GISA cannot, therefore, be characterized as arbitrary and capricious.

### IV.

■ Appellant's procedural challenges to the Secretary's action are likewise meritless. First, GISA's due process argument must fail because GISA has no constitutionally-protected right to import into the United States. The Supreme Court has stated:

[N]o one can be said to have a vested right to carry on foreign commerce with the United States.

*The Abby Dodge,* 223 U.S. 166, 176, 32 S.Ct. 310, 313, 56 L.Ed. 390 (1912); *see Norwegian Nitrogen v. United States,* 288 U.S. 294, 318–19, 53 S.Ct. 350, 359, 77 L.Ed. 796 (1933). The statute, 21 U.S.C. § 620, also affords no entitlement; it is exclusively prohibitory in nature. Since it has no constitutionally-protected property interest, GISA enjoys no right to advance notice and a hearing.

■ In advancing its procedural claims GISA also alleges that appellees failed to comply with section 401 of the Act, 21 U.S.C. § 671 (1982), in basing their delistment on the mere indictment of Dr. Rodriguez. Section 401 provides that the USDA shall impose sanctions for criminal acts only after it determines, subsequent to a hearing, that someone responsibly connected with the company has been convicted of a felony or multiple lesser food-related crimes. Section 401 concerns the procedures that the Secretary must afford a company before he withdraws inspection services. Foreign corporations have never been

---

1. The standard that the government urges, an "any doubt" standard, would seem to give un-

due importance to a phrase used by one Senator during legislative debate.

subject to regular USDA inspection; section 401 necessarily applies only to domestic producers. Under the regulation, "reasonable notice" must be given not to the foreign plant but "to the foreign government." It is questionable whether appellant can enforce that requirement. In any event, the Department of Agriculture did provide such notice to the government of Costa Rica.

The judgment of the district court is accordingly

*Affirmed.*