## THE ESTHER M. RENDLE.

## UNITED STATES v. RENDLE.

(Circuit Court of Appeals, First Circuit. September 9, 1925.)

No. 1857.

**1. Shipping ⬅️16—Not all places on high seas are foreign to United States within forfeiture statutes.**

Not all places on the high seas are foreign to the United States, within Rev. St. § 4337 (Comp. St. § 8086), providing for forfeiture of vessel proceeding on foreign voyage without giving enrollment and license to port collector, nor is any point outside territorial limits of United States a foreign point.

**2. Shipping ⬅️16—Tug towing lighter to ship at sea held not making "foreign voyage."**

Tug enrolled and licensed for coasting trade *held* not to have "proceeded on foreign voyage," subjecting her to forfeiture under Rev. St. § 4337 (Comp. St. § 8086), by towing lighter from port to vessel hovering at sea, from which lighter was laden with liquor, and then towing her to port.

[Ed. Note.—For other definitions, see Words and Phrases, Foreign Voyage.]

**3. Shipping ⬅️16—Knowledge of owner that tug was being used to defraud United States revenue held immaterial.**

Where license granted tug provided that it should not be used in trade whereby revenue of United States may be defrauded, whether owner thereof had knowledge that tug was being used to tow lighter laden with liquor from ship at sea, and therefore subjecting her to forfeiture, within Rev. St. § 4377 (Comp. St. § 8132), was immaterial.

**4. Shipping ⬅️16—General allegation of violation of United States customs law held sufficient.**

In libel of information to forfeit steam tug, under Rev. St. §§ 4337, 4377 (Comp. St. §§ 8086, 8132), general allegation that tug towed lighter laden with liquor into United States port, and that unlading of liquor and transportation of alcohol into United States was in violation of customs law, *held* sufficient, within rules of admiralty pleading.

**5. Shipping ⬅️16—Allegation that tug transported liquor loaded on lighter held sufficient.**

In libel of information to forfeit tug, allegation that tug transported liquor when

7 F.(2d)—35

loaded on lighter *held* sufficient; such transportation being prohibited, under National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa).

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Information by the United States against the steam tug Esther M. Rendle. Libel was dismissed (5 F.[2d] 1007), and the United States appeals. Decree reversed, and case remanded for further action.

Laurence Curtis, 2d, of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for the United States.

George L. Dillaway, of Boston, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from a decree of the District Court of the United States for the District of Massachusetts dismissing a libel of information in admiralty to forfeit the steam tug Esther M. Rendle, under sections 4337 and 4377 of the Revised Statutes of the United States, the former being section 8086 and the latter section 8132 of the United States Compiled Statutes of 1916, which are as follows:

Comp. St. § 8086 (R. S. § 4337): "If any vessel, enrolled or licensed, shall proceed on a foreign voyage, without first giving up her enrollment and license to the collector of the district comprehending the port from which she is about to proceed on such voyage, and being duly registered by such collector, every such vessel, together with her tackle, apparel, and furniture, and the merchandise so imported therein, shall be liable to seizure and forfeiture."

Comp. St. § 8132 (R. S. § 4377): "Whenever any licensed vessel is transferred, in whole or in part, to any person who is not at the time of such transfer a citizen of and resident within the United States, or is employed in any other trade than that for which she is licensed, or is found with a forged or altered license, or one granted for any other vessel, such vessel with her tackle, apparel, and furniture, and the cargo, found on board her, shall be forfeited. But vessels which may be licensed for the mackerel fishery shall not incur such forfeiture by engaging in catching cod or fish of any other description whatever."

The essential allegations of the libel are:

"That the said steam tug at the time of said seizure and at all times herein mentioned was a vessel duly licensed for the coasting trade in conformity with the statutes of the United States in such cases made and provided, said license containing a clause that it shall not be used in any trade or business whereby the revenue of the United States may be defrauded.

"That on or about the sixth day of February, 1925, the said steam tug, her master and crew did proceed on a foreign voyage, to wit, from Provincetown in said district to a certain vessel on the high seas, a more particular description of which is to your libelant unknown, hovering off the coast of the said district about 20 miles from the coast thereof, without first giving up her enrollment and license to the collector of the district comprehending the said Provincetown, to wit, Boston, and without being duly registered by said collector; that the said steam tug, in proceeding on the said voyage, did have in tow a certain other vessel, to wit, a lighter, sometimes known as the Pratt, or as No. 10, and did place the said lighter alongside the aforesaid unknown vessel lying on the high seas as aforesaid; that certain merchandise, to wit, a large number of cases of alcohol were unladen from the said unknown vessel onto the said lighter, and that the said steam tug thereafter towed the said lighter, containing the said alcohol to and into the United States at said Boston Harbor; that the said unlading of said alcohol and said transportation of said alcohol to and into the United States was in violation of the customs laws of the United States and in fraud of the revenue of the United States and was known to be so by those persons at the time in charge of the said steam tug."

The claimant filed an answer and included the following exception:

"And without waiver of any matter in the above answer, the claimant excepts to the libel filed in this cause.

"Because the allegations thereof do not disclose any legal cause of forfeiture of the said steam tug. Because the allegations of the libel do not disclose that the said steam tug proceeded on a foreign voyage within the intent and meaning of the statutes. Because the allegations of the libel do not disclose that the steam tug, if it did the acts alleged in the libel, committed any breach of the statutes of the United States in regard to unlading and transporting of said

THE ESTHER M. RENDLE

alcohol. Because the libel is indefinite and does not sufficiently describe the customs laws of the United States alleged to have been violated."

The District Court heard the case upon the exception, which is equivalent to a demurrer, and considered the following questions only:

(1) Did the Esther M. Rendle proceed on a foreign voyage?

(2) Was the tug engaged in any other employment than that specified in its license?

The only case upon which the government relies in support of its contention that the tug was bound upon a foreign voyage is The Alex Clark, 294 F. 904, a case in the Southern district of New York.

[1] We cannot follow the conclusion reached by the learned District Judge in that case, that "all places on the high seas are foreign to the United States," and "that any point outside the territorial limits of the United States is a point foreign to the United States"; nor do we think it is supported by the decisions of the federal courts. See The Lark, Fed. Cas. No. 8,090; The Eliza, Fed. Cas. No. 4,346; Taber v. United States, Fed. Cas. No. 13,722; The Adventure, 8 Cranch, 221, 3 L. Ed. 542.

In The Eliza, supra, Judge Story said:

"And it is urged that the being bound to the high seas, without the jurisdictional limits of the United States, is being bound 'to a foreign place' within the meaning of the statute. * * * It is clear to my mind, that a 'foreign port or place,' in the statute, means a port or place exclusively within the sovereignty of a foreign nation. Such has been the construction of the same words in the 3d section of the Act of the 9th of January, 1808, c. 8, by the Supreme Court of the United States. Such has been the uniform construction in the District and Circuit Courts of this Circuit."

[2] We think the learned judge of the District Court was right in ruling "that the Rendle did not make a foreign voyage within the meaning of the statute."

[3] The libel contains an allegation that the license granted to the tug has in it a provision that it shall not be used for any trade or business whereby the revenue of the United States may be defrauded, and also that the transportation of said alcohol to and into the United States was in violation of the customs laws of the United States and a fraud upon the revenue of the United States, and that this "was known to be so by those persons at the time in charge of the said steam tug."

The claimant in his answer neither admitted nor denied the allegations of the libel and called for proof, stating that, if any of "the alleged illegal acts" were proved, the same were done without his knowledge or privity. Whether they were done with his knowledge or not is immaterial. United States v. Brig Malek Adhel, 2 How. 210, 11 L. Ed. 239; The Palmyra, 12 Wheat. 1, 6 L. Ed. 531; Dobbins Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637; Goldsmith-Grant Co. v. United States, 254 U. S. 505, 41 S. Ct. 189, 55 L. Ed. 376.

Although the tug was licensed to engage in coastwise trade, its employment in illegal trade or traffic, whether coastwise or foreign, would subject it to forfeiture under R. S. § 4377, as being employed in trade other "than that for which she is licensed."

The following cases, cited upon the appellant's brief, fully sustain this: The Mars, Fed. Cas. No. 15,723 (C. C. Mass.); The Resolution, Fed. Cas. No. 11,709 (C. C. Mass.); The Julia, Fed. Cas. No. 7,574 (C. C. Mass.); The Good Templar, 97 F. 651 (D. C. Mass.).

[4] While the allegation in the libel is general, and does not state what particular customs laws of the United States were violated by the transportation of alcohol, or how this transportation was in fraud of the revenue of the United States, we think it is sufficient under the rules of admiralty pleadings, which do not require the exactness of common-law pleadings, to compel the claimant to answer to the merits of the case.

[5] While the alcohol was not transported aboard the tug, yet the libel alleges that the tug did transport the same when loaded upon the lighter and the transportation of intoxicating liquors is prohibited under Act Oct. 28, 1919, c. 85, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa).

In The Dolphin, decided by this court January 6, 1925, 3 F.(2d) 1, forfeiture of the tug was sought under R. S. §§ 2872, 2874 (Comp St. §§ 5563, 5565).

The former provides in substance that:

"No merchandise brought in any vessel from a foreign port shall be unladen or delivered from such vessel within the United States * * * unless special license has been granted; nor at any time without a permit from the collector and naval officer, if any, for such unloading or delivery,"

—and the latter that not only the merchandise, but the vessel from which it is unladen, shall be subject to forfeiture and seizure; and this court decided that the tug, not being the vessel from which the mer-

chandise was unladen, was not subject to forfeiture. That decision was in no way concerned with the forfeiture of a vessel "employed in any other trade than that for which she is licensed," or "in violation of the customs laws of the United States and in fraud of the revenue of the United States."

The decree of the District Court is reversed, the exception overruled, and the case is remanded to that court for further action not inconsistent with this opinion.