## THE HAMMITT L. ROBBINS.

District Court, E. D. Virginia.
April 1, 1931.

Paul W. Kear, U. S. Atty., and H. H. Rumble, Asst. U. S. Atty., and Sp. Asst. to Atty. Gen., both of Norfolk, Va., for the United States.

Howard M. Long, of Philadelphia, Pa., and A. L. Roper, of Norfolk, Va., for mortgagees (interveners).

WAY, District Judge.

In this cause the United States of America filed its libel of information against the gas screw Hammitt L. Robbins seeking her condemnation and forfeiture and praying that all persons claiming any interest in the vessel be cited to appear and show cause why forfeiture should not be decreed as prayed.

The grounds upon which forfeiture is sought are briefly as follows: (1) That the Hammitt L. Robbins, having arrived from a foreign port or place and after its arrival within four leagues of the coast, permitted its cargo or a part thereof to be discharged before coming to a proper place for discharge and before obtaining a permit to discharge its cargo, contrary to sections 586 and 587 of the Tariff Act of 1930 (19 USCA §§ 1586, 1587); (2) that said vessel at the time of seizure was employed in another trade from that for which she was licensed, contrary to section 4377 of the Revised Statutes (USCA, title 46, § 325); and (3) that the vessel on or about February 6, 1931, arrived within four leagues of the coast of the United States from a foreign port or place, to wit, from some point on the high seas where she had made contact with some vessel unknown to libelant and received from such vessel a cargo of foreign merchandise, and after her arrival within four leagues of the coast, and before she had come to a proper place for the discharge of such merchandise and before she had received a permit to unlade, did permit a part of her cargo to be unladen contrary to the provisions of section 586 of the Tariff Act of 1930.

In due time Frank T. Stowman, H. B. Stowman, and Lockwood W. Fogg, residents of New Jersey, intervened and filed their libel and petition asserting a mortgage lien for $12,000 against the vessel, alleged to represent a part of the purchase price in a sale of the vessel by them in December, 1930, to one Smith Hand of Leesburg, N. J., at the price of $17,000, $5,000 of which it appears was paid in cash. It is alleged that the mortgage was duly executed and acknowledged by the mortgagor and on the day of the sale recorded in the office of the collector of customs in Philadelphia. In support of these allegations a duly certified copy of the mortgage with the usual notations thereon is filed as an exhibit with the intervening libel and petition. It is further shown that said Smith Hand in January, 1931, sold the vessel to one Samuel Miller of Philadelphia, the latter sale being made subject to the mortgage aforesaid, and that the bill of sale covering the latter transaction was also duly and promptly recorded in the office of the collector of customs of Philadelphia.

The petition further set forth that the debt secured by the mortgage was not due and payable until March 26, 1931, that no part of the debt has been paid, and paragraph 6 of the libel alleges: "That your libellants and petitioners had nothing to do with the sale of said vessel by Smith Hand to the said Samuel Miller and they had no reason to believe that the said Samuel Miller would use or allow said vessel to be used for any unlawful business or in violation of any law of the United States, or for any purpose other than that allowed by her enroll-

ment or license for the coasting trade, that they had no knowledge as to the said Samuel Miller, but in this connection aver that the said sale to him was made under and subject to the libellants and petitioners aforesaid mortgage."

Exceptions were filed to the petition, challenging the validity of the defense of innocence of the mortgagees as well as challenging the jurisdiction of a court of admiralty over the claim asserted in the petition. These exceptions were not pressed at the trial, and the cause came on to be heard upon the pleadings and proofs and was fully argued both orally and by briefs.

The testimony and exhibits show that the Hammitt L. Robbins, a gas screw vessel of 48.66 gross, 39 net, tons, was licensed January 30, 1931, for one year in the name of one Samuel Miller, for the purpose of carrying on the coasting trade and in order to obtain the license said Miller made oath, among other things, that the vessel should not be used for any other employment than therein specified, or in any business or trade whereby the revenues of the United States might be defrauded. The vessel had carried a similar license prior to January 30, 1931. The Robbins was supposedly an oyster boat used in the oyster business.

On February 6, 1931, at about 5:30 p. m., the Robbins was located by Captain Moore and other members of the United States Coast Guard aground in or near Machipongo channel about a mile from shore, on the Atlantic Ocean side of the Eastern Shore of Virginia, the point in question being about twenty-eight miles north of Cape Charles. Her only occupant at that time was a Virginia state prohibition officer who had gone on her earlier in the day. The deck was loaded with oyster shells and she had aboard an oyster dredge and other paraphernalia, designed for use in oystering, thereby giving her all the appearances of a bona fide oyster boat. Below deck, however, she was found to have a cargo consisting of 434 cases or bags and 9 kegs of spirituous liquors. Some of the cases or bags contained six quarts, but most of them apparently contained twelve quart or twenty-four pint, bottles of spirituous liquors bearing foreign labels. Specimens of these goods in case as originally packed, and others unpacked, were introduced in evidence as exhibits. The liquors in the cases or bags were packed in heavy paper cartons, each paper carton having around it a strong burlap bag. Each of the bottles exhibited was incased in a heavy corrugated paper wrapper. The bottles exhibited bore export labels and other printed matter indicating that all had been distilled and packed either in Edinborough, Scotland, or in Vancouver, or Marpole or Montreal, Canada.

About 2 or 3 o'clock a. m. on the same day that the Robbins was seized by the Coast Guard, one Smith, sleeping in his fishing vessel at Willis Wharf, Va., was aroused by two or three men who requested him to go down to the channel and save some men off a sunken boat. Smith agreed to go, but only one of the men accompanied him, the others going ashore at Willis Wharf. Smith describes his movements as follows:

"Q. Yes, just begin at the beginning and tell his Honor the whole story. A. I was at Willis Wharf aboard of my boat asleep and there was two or three men or four—I don't know how many—come aboard my boat and asked me if I wouldn't go down the channel and save some men off a sunken boat and, of course, I agreed to go and was only one man went with me. The rest got out on the wharf.

"Q. Only one man went with you? A. Yes, sir, and when we got where he thought the boat was, he said there was men aboard the sunk boat hollering for help, for somebody to save them, and, of course, I agreed to go and I didn't think a thing until just before we got to where he thought the boat was and he told me that I needn't worry, that I wouldn't lose anything by the night's work and, of course, I knew there was something different from saving a man's life and I told him, I said 'Look, man, don't get me in no trouble.' He said 'That is all right'. He said 'I have got twelve brothers with me and they will take care of you,' and he hauled his guns out. He didn't put them on me but he hauled them out and let me know that I was in his hands and, of course, I begged him to not get me in any trouble but still those men were in bad shape on the boat. The boat was sunk but he claimed that he had stolen the boat from ashore, been ashore in a small boat and stolen this gasoline boat."

It further appears from Smith's testimony that the sunken boat was found to contain from 75 to 125 cases or bags of whisky, and that under direction of the men, he carried the whisky ashore at Red Bank, it requiring two trips for that purpose; that after taking the whisky and the two men from the sunken boat and landing the whisky at Red Bank, the men then directed him to carry them to the Hammitt L. Robbins. On the way to the Robbins they had Smith stop at the sunken boat, take more liquor off, and then proceed to the Robbins, where they took a crew off the Robbins and landed them at

Red Bank. The work was finished around 8 a. m. and Smith received for his services $75. While he could not say definitely what month or day of the month all of this occurred, Smith related occurrences which identified the occasion in such a way as to leave no reasonable doubt that it was the same day the Coast Guard seized the Robbins.

Smith further testified that the deck of the Robbins was loaded with oyster shells which "looked like they had been there all winter." The Robbins and the sunken boat were about half a mile apart, the latter boat being nearer the shore, and Smith was directed by the same men to go on all of the trips described by him.

No permit was ever issued to the Robbins to discharge her cargo. The vessel was appraised at $4,000 and her cargo of liquors at slightly over $16,000.

The only witness called by petitioners was Lockwood W. Fogg, one of the mortgagees and petitioners who testified that he owned a one-half interest in the mortgage. Fogg's testimony was not contradicted and tends to establish the allegations of the petition relative to the mortgage of $12,000 against the Robbins; that he and his associate mortgagees had no connection with or knowledge of the illegal activities of the Robbins but were innocent thereof; and that their only interest in the Robbins was as mortgagees under the mortgage of December 27, 1930, securing a part of the purchase price to be paid to them by Smith Hand, the alleged purchaser. Fogg further testified that he had known Smith Hand to whom he and his associates sold the Robbins for three or four years, that Hand was in the oyster business and his reputation in the community in which he lived was excellent, but that he (Fogg) did not know Samuel Miller, the purchaser of the Robbins from Smith Hand, but understood that Miller is a resident of Philadelphia.

It was suggested in the argument of counsel for the petitioners that the Robbins might have been stolen and thereafter used in the illegal operations, but Smith Hand and Samuel Miller were not produced, in fact, no witness was produced, to verify such suggestion, and no explanation was given to the court for the failure to produce Hand and Miller as witnesses.

The contentions made by petitioners are:

1. That the government has failed to prove the allegations of its libel; and

2. That petitioners are bona fide mortgagees of the Hammitt L. Robbins standing virtually in the position of innocent owners having no connection with or knowledge of the illegal operations of the Robbins and that no facts came to their attention to cause them to suspect that either Hand or Miller or others were using the vessel for illegal purposes until after the seizure by the Coast Guard.

From the evidence adduced at the hearing, an outline of a part of which is given above for convenience, the court finds that the essential allegations of the libel have been proved, that there was reasonable and probable cause for the seizure of the Robbins and her cargo, and that the same should be condemned as prayed in the libel. This is particularly true as regards the second and third grounds above outlined upon which the prayer for condemnation and forfeiture is based.

The uncontradicted testimony of libelants' witnesses establishes a case of the vessel being employed in another trade than that for which she was licensed in violation of the provisions of section 4377 of the Revised Statutes (USCA, title 46, § 325). The circumstances of the vessel's deck being loaded with oyster shells which apparently had been there all winter, the lack of any fact disclosed in the evidence tending to show that she had recently been engaged in bona fide oystering, the absence of any one around her or appearing shortly afterwards claiming that he had been engaged in operating her as an oyster boat or of any showing that she had been stolen or taken from lawful operators by force and diverted to an illegal business, the character of the real cargo aboard her, the evident concert of action and purpose between those in charge of her and those on the sunken vessel on the morning of the 6th, the landing of a part of her cargo, and the complete and immediate disappearance of all persons apparently interested in her, leave no serious doubt in the mind of the court as to the establishment of that ground of forfeiture.

It was earnestly urged that the evidence fails to establish the third charge, namely, that the vessel, before coming to a proper place for discharge and before receiving a permit to discharge, discharged foreign merchandise in the United States contrary to the provisions of section 586 of the Tariff Act of 1930. It is argued both orally and in the brief of the petitioners that the labels on the bottles are not proof that the Robbins had contacted a foreign vessel at sea, obtained a cargo of foreign liquors, and discharged a part of them, and that there is no proof that the liquors are in fact foreign.

This argument might be much more persuasive if the labels were in fact the only evi-

dence before the court on that point, but they are not. The great care, expense, and expertness with which the goods were packed, the liquors having as they do the appearance of foreign goods of fine quality, the lack of any evidence of their having been in this country before, the isolated place at which they were landed, are also persuasive circumstances. The only other inference which the court could draw from these circumstances is a strained and unreasonable one: That the whisky was illegally made, bottled, and packed with care, expense, and expertness in this country, labeled with fraudulent labels, and illegally transported to the coast, illegally loaded on the vessel, illegally transported along the coast, and finally illegally landed at an isolated point on the Atlantic Coast, carries no strong appeal to common sense or reason. In view of all the circumstances shown in the evidence, the court has reached the conclusion that the third ground of forfeiture is clearly established.

Numerous authorities are cited to sustain the contention of counsel that the evidence fails to prove the goods were of foreign origin and obtained by the Robbins through making contact with some vessel on the high seas. U. S. v. One Packard Sedan (D. C.) 14 F.(2d) 874, is among the cases cited. The facts in that case as set forth in the opinion (page 875) are not nearly so strong or convincing as the facts in this case. The facts in U. S. v. Packard Sedan (D. C.) 23 F.(2d) 865, at page 866, also differ materially from those in the instant case.

U. S. v. The Gas Screw Evelyn Ruth (D. C.) 42 F.(2d) 458, 1930 A. M. C. pages 1674, 1675, is also cited as authority for counsel's contention. The facts and circumstances in that case are in many respects similar to those in the instant case. Upon appeal the Circuit Court of Appeals reversed the District Court in the Evelyn Ruth Case and expressly held that the evidence was sufficient to establish the contentions of the government and particularly to show the existence of probable cause for instituting the libel. See U. S. v. Victor H. Blackwood, Claimant (C. C. A.) 47 F.(2d) 849, 851, decided March 10, 1931. The Circuit Court of Appeals in reversing the decision of the District Court said:

"The District Court found that the government by its evidence had sustained the burden of proof, and that it was sufficient to warrant a finding in its favor of all the facts alleged in the libel, so far as concerns count 3, except as to the foreign origin of the liquors. The court assumed that the evidence

warranted a finding of probable cause for instituting the proceeding, which necessarily included a finding of probable cause to believe that the liquors were of foreign origin, for the government could not have probable cause for instituting the libel if it did not have probable cause to believe the existence of all the facts therein alleged. But in substance and effect the District Court held that, notwithstanding section 615 placed the burden of proof upon the claimant, the burden was on the government. This was error. There was abundant evidence warranting a finding of probable cause for instituting the libel so far as it concerned the third count. It is unnecessary to recount it.

"This court in Vincent v. United States, 19 F.(2d) 344, 346, had under consideration this very question. It was there held that the 'evidence was sufficient to justify the District Court in finding probable cause for the bringing of the libel (section 615), such as would require the claimant to assume the burden of proof and show that the motorboat was not guilty of the charges preferred against her (Locke v. United States, 7 Cranch, 339, 3 L. Ed. 364; The Squanto (C. C. A.) 13 F.(2d) 548; The Thompson, 3 Wall. (70 U. S.) 155, 18 L. Ed. 55), which he failed to do; * * * justifying a forfeiture of the vessel under sections 450 and 453, above quoted. * * *'"

This brings us to the defense that petitioners are bona fide holders for value of a valid mortgage lien against the vessel and are innocent of any connection with or knowledge of the illegal operations in which the Robbins was employed at and immediately before she was seized by the Coast Guard. Laying aside the failure of petitioners to throw any light upon the operations of the Robbins between the time of the sale of her to Smith Hand December 27, 1930, and her seizure by the Coast Guard on February 6, 1931, and their failure to produce either Smith Hand or Samuel Miller as witnesses or to explain their failure so to do, and assuming that the testimony of the one witness produced by the petitioners fully establishes all the material affirmative allegations of their petition, this does not make a valid defense to the claim of the government that the vessel should be condemned and forfeited. In the view that the court takes this part of the case is controlled by the decision of our Circuit Court of Appeals in The Pilot, decided September 19, 1930, and reported in 43 F.(2d) 491, 493. In that case Circuit Judge Northcott, speaking for the court, said:

"Innocence of the owner is not a defense to forfeitures in rem incurred under the customs and navigation laws. There is no disagreement among the courts on this proposition, and the law on this point has been definitely settled. United States v. One Saxon Automobile et al. (C. C. A.) 257 F. 251; United States v. Mincey (C. C. A.) 254 F. 287, 5 A. L. R. 211; Logan v. United States (C. C. A.) 260 F. 746; United States v. One Black Horse (D. C.) 129 F. 167; The Esther M. Rendle [(C. C. A.) 7 F.(2d) 545; Id. (C. C. A.) 13 F.(2d) 839], supra; The Mineola [(C. C. A.) 16 F.(2d) 844], supra; Dobbins' Distillery v. United States, 96 U. S. 395, 24 L. Ed. 637; United States v. Stowell, 133 U. S. 1, 10 S. Ct. 244, 33 L. Ed. 555; Goldsmith, Jr.–Grant Co. v. United States, 254 U. S. 505, 41 S. Ct. 189, 65 L. Ed. 376. See, also, United States v. Brig Malek Adhel, 2 How. 210, 233, 11 L. Ed. 239; Van Oster v. Kansas, 272 U. S. 465, 47 S. Ct. 133, 71 L. Ed. 354, 47 A. L. R. 1044.

"It was specifically held by the Circuit Court of Appeals, First Circuit, in Machado v. United States, 16 F.(2d) 844, that the law authorizing forfeiture of a vessel engaged in an unlicensed trade was not repealed by the National Prohibition Act, and that whether the vessel carried intoxicating liquor or other merchandise, when used in unlicensed trade, was immaterial."

In concluding the opinion Judge Northcott added: "While the innocence, good faith, and want of guilty knowledge on the part of the owner in the instant case might appeal strongly to the discretion of an executive, vested by Congress with the power to act in such cases, such facts are not legal defenses and may not properly be acted upon by the courts."

It follows from what has been said herein that it is necessary to refuse the decree presented by petitioners, and the decree presented by libelant will with slight changes be entered as of this date.