678 So.2d 1377 (1996)
WARNING SAFETY LIGHTS OF GEORGIA, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, L.H. Fuchs, Executive Director, Appellee.
No. 94-1243.
District Court of Appeal of Florida, Fourth District.
September 4, 1996.
Edward E. Sawyer of White & Case, Miami, for appellant.
Robert A. Butterworth, Attorney General, Lealand L. McCharen, Charles Catanzaro, and Joseph C. Mellichamp, III, Assistant Attorneys General, Tallahassee, for appellee.
SHAHOOD, Judge.
Appellant, Warning Safety Lights of Georgia, Inc. ("WSLG"), appeals from an adverse Declaratory Statement rendered by the appellee, State of Florida, Department of Revenue ("Department"). We agree with appellant's position that WSLG's entire agreement with the Florida Department of Transportation ("DOT") constitutes a service and thus, is not subject to Florida sales tax. We therefore set aside the Department's Declaratory Statement pursuant to section 120.68(9)(a), Florida Statutes (1993).
WSLG is a duly authorized subcontractor of the DOT and is qualified to perform work on DOT road construction projects in Florida. WSLG acts as a subcontractor on DOT projects to provide the construction and maintenance of temporary and permanent traffic control patterns during the construction or repair of a permanent roadway.
In a "typical" road construction project, the DOT prepares separate, detailed plans and specifications for each aspect of the project, *1378 such as earthmoving, paving, and construction and maintenance of temporary and permanent traffic control patterns. A "Bid Solicitation Notice State of Florida Department of Transportation" of different DOT projects is sent to prime contractors and subcontractors on the DOT's mailing list and to those who request such notice. The notice includes, among other things, "Structure Bid Items," a list of items necessary to perform the job. The bid items include the quantity the DOT determines to be necessary and the unit pricing method.
After a competitive bidding process, the DOT enters into a contract with a single prime contractor. The prime contractor then subcontracts various aspects of the project to subcontractors through another competitive bidding process. The subcontract work on a DOT road construction project is expressly set forth in the detailed plans and specifications. Bids are prepared with a unit price for each bid item required under the plans and specifications, such as temporary barricades. In the instant case, barricades are bid on a per diem basis. If the subcontractor in this case is the successful bidder, it enters into a separate subcontract with the prime contractor.
WSLG maintains that the methods by which it obtains, performs, and is paid under its subcontract is identical to the methods utilized by all other DOT subcontractors. Each subcontractor is obligated to perform in accordance with the plans and specifications. Generally, deviations from plans and specifications require a written change order, which must be approved by the DOT's onsite traffic control engineers. However, minor changes do not require a change order.
While the type of subcontract work performed by WSLG on each DOT job varies, WSLG's role is generally the same. WSLG constructs the temporary traffic control pattern around the area where the roadway is being built or repaired, continuously maintains and adjusts the temporary traffic pattern throughout the project, and then installs permanent road striping, traffic signs and related permanent traffic control devices.
Construction of temporary traffic patterns includes: installing temporary road striping; metal and plastic barricades; traffic signs; warning lights and sign boards. The maintenance of the traffic control pattern includes: repairing and replacing lights and barricades; batteries and other mechanical or traffic control devices as needed; and monitoring the quality of the temporary road striping. In addition, WSLG makes adjustments to the traffic control pattern and road striping as called for in the plans and specifications; as one segment of the roadway is completed and the construction moves to a new segment, the traffic control pattern is adjusted accordingly. When the roadway is completed, WSLG removes the temporary traffic control pattern.
WSLG supplies its own personnel at the site for construction, maintenance, or adjustments on the traffic control patterns during most working days of the DOT project. All work is performed by WSLG under its subcontract by its personnel under WSLG's direction and control. Further, the equipment provided by WSLG is under WSLG's continuous control and supervision. The prime contractor neither performs WSLG's work nor does the prime contractor control or direct WSLG's work. The DOT's on-site traffic control engineers determine whether WSLG's performance complies with plans and specifications. WSLG bears the risk of loss with respect to all of its material and equipment at a job site. However, the prime contractor is ultimately liable to the DOT for completion of the work.
In this case, WSLG petitioned the Department for a declaration under section 120.565, Florida Statutes (1993), concerning the impact of sections 212.05 and 212.02(10)(g), Florida Statutes (1993), and sections (10) and (41) of rule 12A-1.071, Florida Administrative Code (1993), on WSLG's business. Specifically, WSLG requested a Declaratory Statement that its business constitutes a service that is not subject to Florida sales and use tax or a lease or rental business subject to tax, in accordance with the provisions referenced above. The Department, in its Declaratory Statement, held that WSLG's proceeds from DOT road construction projects with respect to road striping and permanent traffic control devices are *1379 not taxable as they are improvements to real property. However, the Department held that proceeds from DOT construction projects derived from temporary traffic control devices are fully taxable, on grounds that WSLG is engaging in the leasing of tangible personal property properly subject to taxation. WSLG asserts that its entire road construction business, including the construction and maintenance of temporary traffic control patterns, is a nontaxable service, and thus, may not be divided into separate components, one a taxable rental and the other a nontaxable service as suggested by the Department.
Section 120.565, Florida Statutes (1993), provides in pertinent part as follows:
Each agency shall provide by rule the procedure for the filing and prompt disposition of petitions for declaratory statements. A declaratory statement shall set out the agency's opinion as to the applicability of a specified statutory provision or of any rule or order of the agency as it applies to the petitioner in his particular set of circumstances only.... Agency disposition of petitions shall be final agency action.
(Emphasis supplied).
Article VII, section 1(a) of the Florida Constitution provides that, "No tax shall be levied except in pursuance of law." Pursuant to specific statutory mandate, certain services are taxable, such as television system programming services. See § 212.05(1)(e)1.b, Fla. Stat. (1993). Conversely without statutory authority, taxes on services cannot be levied.
In addition, it is a fundamental rule of construction that the authority to tax must be strictly construed against the taxing authority and in favor of the taxpayer and all ambiguities or doubts must be resolved in favor of the taxpayer. Maas Bros. v. Dickinson, 195 So.2d 193 (Fla.1967); Florida Dep't of Revenue v. Quotron Sys., Inc., 615 So.2d 774 (Fla. 3d DCA 1993); Florida Hi-Lift v. Department of Revenue, 571 So.2d 1364 (Fla. 1st DCA 1990); Florida S & L Servs., Inc. v. Department of Revenue, 443 So.2d 120 (Fla. 1st DCA 1983). As eloquently stated in Maas Brothers, "This salutary principle is found in the reason that the duty to pay taxes, while necessary to the business of the sovereign, is still a duty of pure statutory creation and taxes may be collected only within the clear definite boundaries recited by statute." Id.; see also State ex rel. Seaboard Air Line R.R. v. Gay, 160 Fla. 445, 35 So.2d 403 (1948).
The Department takes the position that DOT road construction projects are complex engineering enterprises accomplished under detailed contracts and subcontracts involving a number of different people contributing a variety of skills. Each phase of the project involves elements driven by different factors. Tax liability follows from the taxable privileges identified in the Florida Statutes, and each element of each phase must be analyzed in order to determine a correct tax posture. In order to accomplish this, a business' operation may consist of different component parts. Here, WSLG's participation as a subcontractor on DOT projects involves services exempt from tax and entails the rental of equipment on a daily basis. The rental aspect is distinctly identified in the contract and is separate from other services provided. Hence, the Department reasons that a business may be divided into separate components in order to determine tax liability, if any.
In American Video Corp. v. Lewis, 389 So.2d 1059 (Fla. 1st DCA 1980), the court held that where the provider of cable T.V. services bought "drop-in items" (i.e., hooks, cables, transformers, rods, etc.) for use in providing cable services, those items were not "rented" to the provider's customers; therefore, there was no "resale" to the customers which would cause the provider's initial purchase of those items to be subject to sales tax. The court noted that there was no separate charge in its monthly billing for these items to the provider's customers. Id. at 1061. Further, the court determined that these parts were:
unused, unusable and of no value in and of themselves to the customer, so as to support payment of a separate consideration for their possession, until such time as appellant makes the proper connections to *1380 its system so that the customer can watch cable T.V. For this, and nothing else, the customer pays a consideration in the form of his monthly service charge, the only charge made, except for the initial hook-up and equipment deposit.
Id.
WSLG analogizes that the tangible personal property involved in the instant case was incidental to the overall service provided and that the true value was in the services of WSLG. Thus, WSLG maintains that its equipment is of no value to the prime contractor or the DOT unless properly installed, maintained, adjusted and removed in accordance with plans and specifications.
The Department however, contends that the barricades, priced on a per diem basis, possess a value independent of the completed project.
Although the barricades are not unusable in and of themselves, it is WSLG's service of setting up and maintaining the temporary traffic control pattern which provides the ultimate value to the DOT and the prime contractor to facilitate the completion of the road construction project.
WSLG next contends that the Department erred in the Declaratory Statement in finding that WSLG's business of maintenance and construction of temporary traffic control patterns (i.e. barricades) is a rental business and therefore subject to taxation. In its Declaratory Statement, the Department interpreted section 212.02(10)(g), Florida Statutes (1993), defining "lease," "let," and "rental" to include "those transactions in which the owner of tangible personal property transfers possession or use of this property to another, for consideration, without the transfer of title" in order to determine whether WSLG's business was subject to tax pursuant to section 212.05. The Department determined that if each of the following four questions was answered in the affirmative, then WSLG's business would be subject to tax; however, if these questions were answered in the negative, then WSLG's business would not be viewed as a lease, let, or rental. The four questions are as follows:
(1) Is tangible personal property involved?
(2) Will petitioner transfer possession or use of the property?
(3) Is consideration to be paid for such transfer?
(4) Will petitioner retain title to the property?
Both WSLG and the Department readily concede that questions 1 and 4 are answered in the affirmative. As discussed supra, the barricades and warning lights are considered tangible personal property. Further, WSLG owns this property and does not transfer title to these temporary traffic control devices; only title to permanent traffic control devices are transferred.
Rule 12A-1.071(1), Florida Administrative Code (1993), provides that the transfer of "possession" is as follows:
(b) Transfer of possession with respect to an operating lease means that one of the following attributes of tangible personal property ownership has transferred:
1. Custody or possession of the property, actual or constructive;
2. The right to custody or possession of the property; or
3. The right to use and control or direct the use of the property.
"Use" is defined in section 212.02(21), Florida Statutes (1993), as follows:
`Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it does not include the sale at retail of that property in the regular course of business.
In its Declaratory Statement the Department held as follows:
From the facts given to us, it appears that the prime contractor would have control over the construction site and would have at least constructive possession of the traffic control devices. Petitioner's employees place, move, and remove the traffic control devices. Thus, the traffic control devices are in the joint possession of petitioner and the prime contractor.
There is no basis for holding that the prime contractor has control over the construction site and, therefore, is in "joint possession" *1381 of the equipment in question. If the prime contractor is in "joint possession" of the equipment of WSLG, then it should be in "joint possession" with all subcontractors who provide equipment to the construction site, i.e., subcontractors who provide cranes, bulldozers, road graders and so forth. In such a situation these subcontractors would also be subject to the tax. Such a ruling is clearly violative of rule 12A-1.071(10)(c) and (d) which provides as follows:
(c) A transaction is not a lease if it is for the performance of a specific job in a manner to be determined by the owner or his operator.
(d) When the owner of equipment furnishes the operator and all operating supplies, and contracts for their use to perform certain work under his direction and according to his customer's specifications, and the customer does not take possession or have any direction or control over the physical operation, the contract constitutes a service transaction and not the rental of the tangible personal property, and no tax is due on the transaction.
(Emphasis supplied).
Further, in its Petition for Declaratory Statement, WSLG asserted that a classification as a "subcontractor" under the Davis-Bacon Act, 40 U.S.C.A. § 276a (1986) (rate of wages for laborers and mechanics), precludes a determination that it is in the business of leasing tangible personal property. The Davis-Bacon act is a federal labor law that applies exclusively to federal public works contracts. This act does not apply to the case at bar, as WSLG readily agrees that the Davis-Bacon act is not controlling for Florida sales tax purposes. We hold that the Declaratory Statement correctly asserted that based upon Florida's sovereign power to impose taxes, Florida tax laws are not dependent upon federal law.
We conclude that the Department's Declaratory Statement was clearly erroneous in its resolution and conclusion that WSLG was engaged in a rental business for purposes of assessing Florida sales tax liability.
We therefore reverse and remand pursuant to section 120.68(9)(a), Florida Statutes, with directions to the Department to set aside or modify its Declaratory Statement to conform with this opinion.
Reversed and remanded.
GLICKSTEIN and FARMER, JJ., concur.