UNITED STATES of America,
Plaintiff–Appellant,

v.

ONE BIG SIX WHEEL,
Defendant–Appellee.

No. 497, Docket 98–6028.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1998.

Decided Jan. 29, 1999.

Lauren Resnick, Assistant United States Attorney, Brooklyn, N.Y. (Zachary W. Carter, United States Attorney, Eastern District of New York; Susan Corkery, Assistant United States Attorney, on the brief), for Plaintiff–Appellant.

Gerard E. Harper, New York, N.Y. (Michael E. Gertzman, Roberto Finzi, Paul, Weiss, Rifkind, Wharton & Garrison, on the brief), for Defendant–Appellee.

Before: NEWMAN and JACOBS, Circuit Judges, and BURNS, District Judge.*

JACOBS, Circuit Judge:

The Gambling Ship Act, codified at 18 U.S.C. §§ 1081–1084 (1994), prohibits offshore gaming except on certain voyages beyond "the territorial waters of the United States." 18 U.S.C. § 1081; see 18 U.S.C. § 1082. This *in rem* civil forfeiture action, brought by the United States against a shipboard gambling device, requires us to decide whether the recent expansion of "federal criminal jurisdiction" from three to twelve

* The Honorable Ellen Bree Burns of the United States District Court for the District of Connecti-   cut, sitting by designation.

nautical miles—by section 901(a) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, § 901(a), 110 Stat. 1214, 1317 (1996), *reprinted in* 18 U.S.C.A. § 7, Hist. & Stat. Notes (West Supp.1998)—has implicitly amended the Gambling Ship Act in such a way as to criminalize casino gambling (conducted on a so-called cruise-to-nowhere) between three and twelve nautical miles at sea.

The United States District Court for the Eastern District of New York (Ross, *J.*)—after carefully reviewing the wording of (i) the Gambling Ship Act, (ii) a provision of the Internal Revenue Code incorporated therein by reference, and (iii) the relevant tax regulation—invoked the rule of lenity and dismissed the government's complaint. We are sufficiently persuaded by the statutory language, and the district court's analysis of it, that we affirm on that basis without reliance on the last-resort rule of lenity.

## BACKGROUND

The defendant *in rem*, Big Six Wheel, is a gambling device on board the *Liberty I*, a seagoing vessel owned and operated by Bay Casino, LLC. Bay Casino operates gambling cruises (cruises-to-nowhere) that embark from Sheepshead Bay in Brooklyn, New York and proceed more than three—but less than twelve—nautical miles from the coastline of the United States, to a spot at which the ship operates as a casino until the return voyage to Sheepshead Bay.

At one time, the Gambling Ship Act flatly prohibited gambling aboard American-flag vessels engaging in interstate and foreign commerce, anywhere. *See* 18 U.S.C.A. §§ 1081–1082 (West 1984). The existence of the cruise-to-nowhere industry depends upon a 1994 amendment to the Act, which created exceptions for vessels on certain cruises, defined by reference to a provision of the Internal Revenue Code as of 1994 that levies a tax on the gambling revenues of such cruises.

*See* Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320501, 108 Stat. 1796, 2114–15 (1994) (amending 18 U.S.C. § 1081). In 1994, the Internal Revenue Code defined such cruises as (*inter alia*) those that return within 24 hours to their port of embarkation and conduct gambling (subject to federal taxation) "beyond the territorial waters of the United States." 26 U.S.C. § 4472 (1994). Under the corresponding Internal Revenue regulation in effect in 1994, the territorial waters of the United States extended to three nautical miles. *See* 26 C.F.R. § 43.4472–1(e) (1994).

In August 1997, the United States Attorney for the Eastern District of New York notified Bay Casino that its operations were in violation of the Gambling Ship Act because its ships were not cruising twelve nautical miles to sea before opening the casino. The United States Attorney cited section 901(a) of AEDPA, which provides:

> The Congress declares that all the territorial sea of the United States, as defined by Presidential Proclamation 5928 of December 27, 1988 [extending U.S. territorial sea to twelve nautical miles [1]], for purposes of Federal criminal jurisdiction is part of the United States, subject to its sovereignty, and is within the special maritime and territorial jurisdiction of the United States for the purposes of title 18, United States Code [this title].

18 U.S.C.A. § 7, Hist. & Stat. Note (West Supp.1998) (first alteration and footnote added). Bay Casino, which disputed the United States Attorney's reading of the Gambling Ship Act, nevertheless attempted to comply with the twelve-mile limit, but suffered significant revenue loss because many patrons were unwilling to invest the incremental travel time (without gambling) to and from the twelve-mile limit.

Bay Casino commenced a federal action seeking declaratory relief construing the Act,

---

1. Presidential Proclamation 5928, signed by President Reagan, extended the territorial sea of the United States to twelve nautical miles in order to conform to international standards. *See* 43 U.S.C.A. § 1331 (West Supp.1998). This Proclamation, however, explicitly refused to "extend[ ] or otherwise alter[ ] existing Federal or State law or any jurisdiction, rights, legal interests, or obligations therefrom." *Id.* Therefore, it was not until the enactment of AEDPA in 1996 that the twelve nautical mile limit had any effect upon federal law—and even then, by its own language, only upon federal criminal jurisdiction.

and an injunction restraining the United States from interfering with its gambling cruises. At the district court's suggestion, the parties recast their dispute as a civil forfeiture proceeding by the United States against the defendant *in rem*, Big Six Wheel. Immediately after the government filed its forfeiture complaint, Bay Casino moved to dismiss. The district court granted Bay Casino's motion on December 3, 1997. *See United States v. One Big Six Wheel*, 987 F.Supp. 169, 182 (E.D.N.Y.1997). The government appeals.

## DISCUSSION

The district court concluded that AEDPA had an uncertain effect on the Gambling Ship Act's exception for vessels aboard which gambling takes place beyond three nautical miles, and therefore applied the rule of lenity. *See id.* at 178–82. We are sufficiently convinced by the district court's statutory analysis, however, that we find resort to the rule of lenity unnecessary. *See United States v. Hescorp, Heavy Equip. Sales Corp.*, 801 F.2d 70, 77 (2d Cir.1986) ("[The rule of lenity] is a doctrine of last resort, to be used only after the traditional means of interpreting authoritative texts have failed to dispel any ambiguities."); *see also United States v. Turkette*, 452 U.S. 576, 587 n. 10, 101 S.Ct. 2524, 2531 n. 10, 69 L.Ed.2d 246 (1981); *United States v. Culbert*, 435 U.S. 371, 379, 98 S.Ct. 1112, 1116–17, 55 L.Ed.2d 349 (1978).

### A

■ The Gambling Ship Act criminalizes the operation of gambling ships. *See* 18 U.S.C. § 1082. But the term "gambling ship" is defined to exclude ships that operate casinos on certain cruises, which are in turn defined by reference to a revenue statute (as that revenue statute was worded on a specified date):

> The term "gambling ship" means a vessel used principally for the operation of one or more gambling establishments. Such term does not include a vessel with respect to gambling aboard such vessel beyond the territorial waters of the United States during a covered voyage (as defined

in section 4472 of the Internal Revenue Code of 1986 as in effect on January 1, 1994).

18 U.S.C. § 1081. Thus a "covered voyage" *is* one that is made subject to taxation in the Internal Revenue Code and (reciprocally) *not* covered by the criminal statute, which expressly defines a gambling ship to exclude a vessel on a covered voyage. On January 1, 1994 (and today), the section of the Internal Revenue Code cross-referenced in 18 U.S.C. § 1081 defined a "covered voyage" as follows:

> The term "covered voyage" means that voyage of—
>
> (i) a commercial passenger vessel which extends over 1 or more nights, or
>
> (ii) *a commercial vessel transporting passengers engaged in gambling aboard the vessel beyond the territorial waters of the United States,*
>
> during which passengers embark or disembark the vessel in the United States.

26 U.S.C. § 4472(1)(A) (emphasis added). The emphasized portion of this statute defines a "covered voyage" in terms of travel "beyond the territorial waters of the United States," which (according to the United States) is now twelve nautical miles. However, the Gambling Ship Act cross-references this section of the revenue code "as in effect on January 1, 1994." As of that date (and to the present), the term "territorial waters" was defined as three nautical miles in the applicable regulation promulgated by the Internal Revenue Service:

> *Territorial waters.* For purposes of sections 4471 and 4472, the territorial waters of the United States are those waters within the international boundary line between the United States and any contiguous foreign country or *within 3 nautical miles (3.45 statute miles) from low tide on the coastline.* No inference is intended as to the extent of the territorial limits for other tax purposes.

26 C.F.R. § 43.4472–1(e) (1994 & 1998) (emphasis added).

Therefore, a "covered voyage" under 26 U.S.C. § 4472(1)(A) (and the regulation promulgated thereunder) includes "that voyage

of ... a commercial vessel transporting passengers engaged in gambling aboard the vessel" beyond three nautical miles from the U.S. coastline "during which passengers embark or disembark the vessel in the United States." 26 U.S.C. § 4472(1)(A). By virtue of the cross-reference to 26 U.S.C. § 4472 in the 1994 amendment to the Gambling Ship Act, 18 U.S.C. § 1081, a "covered voyage" for purposes of the Gambling Ship Act is a "covered voyage" as defined in 26 U.S.C. § 4472 as in effect on January 1, 1994. *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) ("[W]here ... Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the [administrative] interpretation given to the incorporated law, at least insofar as it affects the new statute."); *see also Hassett v. Welch,* 303 U.S. 303, 312–14, 58 S.Ct. 559, 564–65, 82 L.Ed. 858 (1938). *Liberty I*—a commercial vessel transporting passengers who engage in gambling beyond three nautical miles from low tide on the U.S. coastline (from which *Liberty I* embarks and to which it returns)— is engaged in covered voyages, and is therefore not a gambling ship.

**B**

■ The government argues that the Gambling Ship Act incorporates by reference the Internal Revenue Code's definition of a "covered voyage," but does not look to the Internal Revenue Code to determine the extent of the nation's "territorial waters," a term used in both statutes. Instead, the government argues that the term "territorial waters" in both statutes has been affected by section 901(a) of AEDPA, as set forth *supra.* We disagree.

The wording of § 1081 does not on its face show whether the phrase "as defined in section 4472 of the Internal Revenue Code of 1986 as in effect on January 1, 1994" modifies only the phrase "covered voyage" (as the government argues), or whether (as Bay Casino argues) it modifies the larger phrase "gambling aboard such vessel *beyond the territorial waters of the United States* during a covered voyage." 18 U.S.C. § 1081 (emphasis added). The government has a point.

One definition of a covered voyage in § 4472(1)(A) does not reference territorial waters at all ("that voyage of—(i) a commercial passenger vessel which extends over 1 or more nights," 26 U.S.C. § 4472(1)(A)(i)). At the same time, however, it is clear enough that (i) a vessel on a "covered voyage" within the meaning of § 4472(1)(A) as of January 1, 1994 is not a gambling ship, (ii) the other definition of a covered voyage in § 4472(1)(A) looks to whether a voyage is within the territorial waters, *see* 26 U.S.C. § 4472(1)(A)(ii); and (iii) on January 1, 1994, that distance was three nautical miles, *see* 26 C.F.R. § 43.4472–1(e).

The government contends that section 901(a) of AEDPA implicitly amended the Gambling Ship Act by extending the territorial waters, so that *Liberty I* was operating as a gambling ship even though it was on a covered voyage for revenue purposes. The government claims too much for AEDPA. Section 901(a) references Presidential Proclamation 5928, which in 1988 extended the United States territorial waters to twelve nautical miles for the limited purpose of conforming to the territorial limits then permitted by international law. However, the Proclamation explicitly limits its application by declaring that "[n]othing in this Proclamation ... extends or otherwise alters existing Federal or State law or any jurisdiction, rights, legal interests, or obligations derived therefrom...." 43 U.S.C.A. § 1331 (West Supp. 1998).

Section 901(a) alters United States boundaries, but not for all purposes. Although the increment of territorial waters is made "part of the United States," this occurs solely "for purposes of Federal criminal jurisdiction." 18 U.S.C.A. § 7, Hist. & Stat. Note. Although that same increment is implemented "for the purposes of title 18," that measure is itself limited to "the special maritime and territorial jurisdiction of the United States." *Id.* Therefore, section 901 is jurisdiction defining. As the district court observed, to infer more would be to "read the phrase 'for purposes of Federal criminal jurisdiction' out of the statute." *One Big Six Wheel,* 987 F.Supp. at 175.

Thus, as the district court further observed, the government's argument ignores the "real distinctions between a jurisdictional element of a crime and a substantive element. The distinction important in this case is that a jurisdictional element does not define the *essence* of what constitutes a criminal offense, and does not contribute to the culpability of the proscribed conduct." *Id.* (emphasis in original).

As the history of the Gambling Ship Act demonstrates, offshore gambling is not conduct *malum per se* (like money laundering, narcotics distribution, etc.). There is no indication that Congress now intends to prohibit shipboard casinos to the full extent of the nation's territorial reach. The 1994 amendment to § 1081 effected a narrowing of the previously absolute prohibition. And the term "territorial waters" used therein is not coextensive with the extent of the nation's criminal jurisdiction; rather, it specifies geographically where a certain kind of offshore gambling is a criminal activity and where it is licit. However one expands the territory in which one's conduct might be proscribed as an offense against the United States, that territorial expansion does not criminalize offshore gambling that the Gambling Ship Act itself does not forbid.

Further, as the district court opinion notes, the government's argument leads to an inherent conflict between the terms "territorial waters" and "covered voyage," such that a gambling cruise could travel three nautical miles to constitute a covered voyage under the Internal Revenue Code; but would have to travel twelve nautical miles to avoid criminal liability under the Gambling Ship Act. *See id.* at 178. But there is nothing in the plain language of AEDPA that indicates an intention to abolish the covered voyage exception in 18 U.S.C. § 1081 or to amend 26 U.S.C. § 4472 or 26 C.F.R. § 43.4472–1(e). *See Morton v. Mancari*, 417 U.S. 535, 550–551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."); *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir.1996) ("When two statutes are in conflict, that statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim.") (citing *American Land Title Ass'n v. Clarke*, 968 F.2d 150, 157 (2d Cir.1992)). Given the plain language of AEDPA and the Gambling Ship Act, we read both terms consistently. For purposes of the Gambling Ship Act, until Congress says otherwise, the "territorial waters" extend three nautical miles from the U.S. coastline.

## CONCLUSION

For the aforementioned reasons, we affirm the district court's dismissal of the civil forfeiture action.