823 So.2d 161 (2002)
NEW SEA ESCAPE CRUISES, LTD., Appellant,
v.
FLORIDA DEPARTMENT OF REVENUE, Appellee.
No. 4D00-3873.
District Court of Appeal of Florida, Fourth District.
June 26, 2002.
Rehearing Denied August 7, 2002.
*162 Ronald A. Marini of Marini & Associates, P.A., Miami, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Martha F. Barrera and Nicholas Bykowsky, Assistant Attorneys General, Tallahassee, for appellee.
KLEIN, J.
Appellant Sea Escape operates what are known as "cruises to nowhere" on a vessel which leaves Fort Lauderdale, cruises outside Florida's territorial waters so that its guests can legally gamble, and returns to Fort Lauderdale. This vessel also cruises, on other occasions, to the Bahamas. This appeal involves the application of Florida's sales and use tax on tangible personal property to: (1) proceeds from the gambling concession agreement, (2) the gambling equipment, and (3) proceeds from the food concession agreement.
Sea Escape is a Bahamian company, operating a foreign flag vessel, which maintains its corporate headquarters in Fort Lauderdale. It is registered with the Department of Revenue as a Florida dealer for sales and use tax purposes. The taxes, which were assessed for a period from September 1, 1996 to April 30, 1998, are authorized by section 212.05, Florida Statutes (1997), which imposes a tax on the sale, lease or rental of tangible personal property.
Sea Escape appeals an order constituting final agency action. Our standard of review in this case, in which there are no disputed issues of fact, is whether the agency erroneously interpreted the law. Metro. Dade County v. State Dep't of Envtl. Prot., 714 So.2d 512 (Fla. 3d DCA 1998).
We first address whether the Department erred in imposing taxes as if the gambling occurred in Florida, when it occurs outside Florida. Sea Escape argues that such taxes, because this vessel is not in Florida waters when the gambling occurs, must be prorated under section 212.08(8)(a), Florida Statutes (1997), which states in part:
The sale or use of vessels and parts thereof used to transport persons or property in interstate or foreign commerce is subject to the taxes imposed in this chapter only to the extent provided herein. The basis of the tax shall be the ratio of intrastate mileage to interstate or foreign mileage traveled by the carrier's *163 vessels which were used in interstate or foreign commerce and which had at least some Florida mileage during the previous fiscal year.... Vessels and parts thereof used exclusively in intrastate commerce do not qualify for the proration of tax.
In addition, section 212.05, the basis for the tax in the first place, contains the words "in the state" several times:
Section 212.05 Sales, Storage, Use TaxIt is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, including the business of making mail order sales, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state.

The Department recognizes that, where a vessel travels from Florida to a foreign port, taxes must be prorated under section 212.08(8). Klosters Rederi A/S v. Dep't of Revenue, 348 So.2d 656 (Fla. 3d DCA 1977); Tropical Shipping & Constr. Co. v. Askew, 364 So.2d 433 (Fla.1978). It takes the position, however, that the taxes applicable to a cruise to nowhere should not be prorated because the vessel does not stop in a foreign port. Even though all of the gambling occurs beyond the three mile limit, the Department assesses taxes in the same manner as if the gambling occurred in Florida.
The Department's distinction, which rests on whether the vessel stops in a foreign port, is a distinction without a difference. The gambling does not occur "within the state" as provided in section 212.05. When the vessel is cruising outside Florida's waters, those miles cannot constitute "Florida mileage" under the proration statute, section 212.08(8).
The Department reminds us that its interpretation of a statute it is charged with enforcing is entitled to great deference and should not be overturned unless clearly erroneous or in conflict with the statute. Donato v. Am. Tel. & Tel. Co., 767 So.2d 1146, 1153 (Fla.2000). That principle, however, applies only where a statute is ambiguous. Id. These statutes are not ambiguous. Moreover, an ambiguity in a taxing statute must be construed "strongly in favor of the taxpayer and against the government with all ambiguities or doubts resolved in the taxpayer's favor." Lloyd Enters., Inc. v. Dep't of Revenue, 651 So.2d 735 (Fla. 5th DCA 1995) and cases cited.
We conclude that the various taxes assessed under section 212.05, in connection with the cruises to nowhere, must be prorated under section 212.08(8).
Sea Escape makes a separate argument which pertains only to the gambling equipment, not the concession agreements, which relies on the fact that no gambling occurs in Florida waters. It argues that no tax, not even a pro rata amount while the vessel is in Florida, should be assessed for the gambling equipment, because it is not "used" in Florida. We disagree.
Section 212.05 levies a tax on tangible property stored "for use or consumption in this state." The word "use" is defined in section 212.02(20), Florida Statutes as including "the exercise of any right or power over tangible personal property incident to the ownership thereof."
The gambling equipment was installed in Florida and is maintained here. In addition, the money is removed from the slot machines while the vessel is in Florida. Sea Escape's position, that the gambling *164 equipment is being used only when gambling takes place, is contrary to the broad definition of "use" in section 212.02(20).
In Klosters, 348 So.2d 656, disposable goods such as tissues and party supplies were loaded on the cruise ship in Florida, but they were consumed only while the vessel was in international waters. The court held, however, that this tangible property was still being used in Florida within the broad meaning of the statute. We agree with Klosters and conclude that the gambling equipment was used, as contemplated by section 212.05, while the vessel was in Florida, subject to proration under section 212.08(8).
We next address Sea Escape's agreement with Tropical Gaming, Inc., under which Tropical operates the gambling concession on the vessel. A sale, for the purpose of the tax mandated by section 212.05, Florida Statutes, is defined in section 212.02(15)(a), Florida. Statutes (1997) as:
Any transfer of title or possession, or both, exchange, barter, license, lease, or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. [Emphasis added.]
If the agreement between Sea Escape and Tropical is a lease or license, it is taxable, but if Tropical is providing a service, it is not taxable. Warning Safety Lights of Ga., Inc. v. Dep't of Revenue, 678 So.2d 1377 (Fla. 4th DCA 1996). Sea Escape argues that Tropical is providing a service.
Section 212.02(10)(g), Florida Statutes (1997) defines "lease" as "the leasing or rental of tangible personal property and the possession or use thereof by the lessee or rentee for a consideration, without transfer of the title of such property...." The Department asserts that the gambling equipment and the area on the vessel where it was located were leased to Tropical within the meaning of the statute.
Although the record is not clear as to who owns the gambling equipment, counsel for Sea Escape agreed at oral argument that the gambling equipment was owned by Sea Escape. In addition, the only logical inference which can be drawn from the agreement, which does not obligate Tropical to furnish any equipment, is that the equipment was already in place and thus owned by Sea Escape.
The agreement provides that the vessel owner granted Tropical "the exclusive right and license" to operate all gaming activities for a four year period. Sea Escape receives seventy-five percent of the gross revenues and Tropical retains twenty-five percent.
Tropical has full control of the gambling operation except that the agreement specifies types of games and limits the bets to $4,000. Sea Escape can change the location of the gambling operation to a different portion of the vessel or to a different vessel.
Tropical maintains and repairs the gambling area and gambling equipment. On termination of the agreement, Tropical is responsible for removing any equipment it owns and for restoring the space to a serviceable condition.
To support its argument that it was providing a service, Sea Escape relies on Warning Safety Lights of Georgia, 678 So.2d 1377, in which we held that the relationship between the parties was not a lease. That case is distinguishable because the party analogous to Tropical was using its own equipment, not the equipment of the other party to the agreement. As we made clear in our opinion, that was a significant fact. In this case both the *165 vessel and the gaming equipment are tangible personal property, possession of which was transferred to Tropical for consideration. This agreement was a lease or license and taxable under section 215.05.
The final issue is whether the food and beverage concession agreement is a lease or license. Sea Escape had a food service agreement with a caterer under which Sea Escape paid the caterer a per person amount for both passengers and crew for the caterer to "purchase, prepare and serve food and housekeeping services to passengers and crew."[1]
The Department's position is that the amount paid by Sea Escape to the caterer was a payment for the purchase of food, which would be taxable. Sea Escape argues that the payments made to the caterer were not for the purchase of food, which was the personal property being taxed. The food, it contends, did not go from the possession of the caterer to the possession of Sea Escape. We agree with Sea Escape, because the caterer supplied prepared meals directly to passengers and crew for a charge per person. This was a service agreement, not a lease. Warning Safety Lights of Ga.
We therefore reverse the assessment on the food and beverages, and for proration of the remaining taxes assessed to both the cruises to nowhere and the cruises to the Bahamas consistent with section 212.08(8) and Klosters. The order is otherwise affirmed.
FARMER and MAY, JJ., concur.
NOTES
[1] The parties are in a dispute as to whether this agreement is part of the record and Sea Escape has moved to supplement to include it. The Department opposes this on the ground that the agreement was not placed in the record; however, we agree with Sea Escape that implied in the Department's assessment of a tax on the agreement, as a lease, is that the agreement had to have been considered by the Department.