HAWKES, J.
Appellant, Dream Boat, Inc., appeals a final order of summary judgment upholding the imposition of a use tax plus penalties and interest. We affirm.
The Department of Revenue (DOR) conducted an audit of Appellant and imposed a use tax, as well as penalties and interest, on oral slot machine license agreements, pursuant to section 212.05, Florida Statutes (1999). Appellant challenged the tax and later moved for summary judgment. After the trial court found the parties stipulated at the hearing on the motion for summary judgment that no disputed issues of material fact remained, it rejected Appellant’s arguments and found DOR entitled to summary judgment as a matter of law. Appellant contends on appeal that disputed issues of material fact remain as to the penalty imposed. However, because the record on appeal does not contain a transcript of the hearing, we have no basis for rejecting the trial court’s finding. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla.1979). We address Appellant’s remaining issues based on the facts found by the trial court to be undisputed.
I
Appellant, a Florida corporation, owns several vessels which are set up for casino gambling with slot machines and other gambling equipment. The gambling equipment was purchased and installed in Florida and, when not at sea, the vessels are docked in Florida ports. Appellant charters these vessels to other Florida companies who take passengers on “cruises to nowhere” for the purpose of gambling. In addition to the bare boat charters, Appellant enters into separate oral license agreements with cruise operators that allow them to operate the slot machines once the vessels have crossed the three-mile boundary of Florida’s territorial waters.[1] Although the vessels leave Florida’s territorial waters, they do not enter any other state’s territory or leave the United States of America. Upon reaching their destination, beyond the three-mile Florida boundary, the casinos are opened and the slot machines are operated. Upon the conclusion of the gaming activities, the slot machines are closed and the vessels return to the same ports from which they departed.
II
Appellant argues the separate oral license agreements were not subject to any tax because the slot machines were not used within Florida. See § 212.05, Fla. Stat. (1999). The trial court properly rejected this argument. The oral licensing agreements occurred in Florida, and the slot machines were used in Flori *3 da, as “use” is defined by section 212.02(20), Florida Statutes (1999). That section broadly defines “use” as “in-clud[ing] the exercise of any right or power over tangible personal property incident” to any interest in the property. Id. Clearly, Appellant exercises power over the slot machines in Florida.[2] Accordingly, DOR properly determined Appellant’s rental of the slot machines to the cruise operators was subject to taxation.
Ill
Appellant also argues it was entitled to a partial tax exemption under section 212.08(8), Florida Statutes (1999), which provides for a proration of taxes for “vessels engaged in interstate or foreign commerce.” Section 212.08(8)(a) provides in part:
The sale or use of vessels and parts thereof used to transport persons or property in interstate or foreign commerce, including commercial fishing vessels, is subject to the taxes imposed in this chapter only to the extent provided herein.... Vessels and parts thereof used exclusively in intrastate commerce do not qualify for the proration of tax. (emphasis added).
The rule is that any claim of exemption from taxation is to be narrowly construed against the party seeking the exemption. See Volusia County v. Daytona Beach Racing & Recreational Facilities Dist., 341 So.2d 498 (Fla.1976), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977). Our state’s Supreme Court has recognized one person’s tax exemption becomes another’s tax. See Redford v. Dep’t of Revenue, 478 So.2d 808 (Fla.1985). In order to qualify for this exemption it must be found that: 1) the tangible personal property located on Appellant’s vessels, in this case the slot machines, are parts used to transport persons or property, and 2) the transportation of persons or property must be in interstate or foreign commerce.
Appellant cannot show its vessels are engaged in interstate or foreign commerce. Therefore we find it unnecessary to reach the question of whether slot machines are “parts thereof’ that would qualify for the partial exemption of section 212.08(8)(a). The vessels never enter any other state’s waters, and Appellant conceded at oral argument its vessels did not engage in interstate commerce. Thus, the question then becomes whether the vessels transport persons or property in foreign commerce. We find they do not.
Commerce with foreign nations means “every species of commercial intercourse between the United States and foreign nations.” Gibbons v. Ogden, 9 Wheat. 1, 22 U.S. 1, 193, 6 L.Ed. 23 (1824). Commerce “among the several states,” i.e., interstate commerce, is “commerce which concerns more States than one.” Id. at 194. Thus, “foreign commerce” would be commerce which concerns more than one nation. See, e.g., Lord v. Steamship Co., 102 U.S. 541, 26 L.Ed. 224 (1880).
In the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress adopted Presidential Proclamation 5928 of December 27, 1988, which extended U.S. territorial seas to 12 nautical miles. Thus, because of this Congressional act and in accordance with international law and treaties, U.S. territorial waters now extend 12 nautical miles. AEDPA did not alter the three-mile rule for gambling cruises under the Gambling Ship Act. See United States v. One Big Six Wheel, 166 *4 F.3d 498 (2d Cir.1999). However, this means only that Appellant’s activities are not in violation of federal law.
Appellant relies heavily on Lord to support its argument that it engages in foreign commerce. However, we find that reliance misplaced. In Lord, the issue was whether a vessel that traveled on the “high seas” from San Francisco to San Diego concerned solely intrastate activity. However, because the trip “could not be performed except by going not only out of California, but out of the United States as well,” it had to be considered foreign commerce or “commerce with foreign nations.” Id. at 544 (emphasis added). The Court reasoned:
The Pacific Ocean belongs to no one nation, but is the common property of all. When, therefore, the Ventura went out from San Francisco or San Diego on her several voyages, she entered on a navigation which was necessarily connected with other nations. While on the ocean her national character only was recognized, and she was subject to such laws as the commercial nations of the world had, by usage or otherwise, agreed on for the government of the vehicles of commerce occupying this common property of all mankind. She was navigating among the vessels of other nations and was treated by them as belonging to the country whose flag she carried. True, she was not trading with them, but she was navigating with them, and consequently with them was engaged in commerce. If in her navigation she inflicted a wrong on another country, the United States, and not the State of California, must answer for what was done. In every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign nations, and as such she and the business in which she was engaged were subject to the regulating power of Congress.

Id.

The United States Constitution grants sole authority to Congress to “regulate commerce with foreign nations, and among the several states, and with the Indian tribes.” Art. I, § 8, cl. 3, U.S. Const. The Florida Supreme Court, recognizing the two competing policies when interpreting the exemptions in section 212.08, stated:
First, we are obligated to narrowly construe tax exemption statutes. On the other hand, we must construe the statute in accordance with the provisions of the United States Constitution. That is, we may not construe the statute so narrowly as to deny businesses engaged in interstate or foreign commerce their right to be free from undue state interference.
Tropical Shipping & Constr. Co. v. Askew, 364 So.2d 433, 435 (Fla.1978). In our holding, we preserve the public policy justifying the exemption. In this case there is no discriminatory treatment or an overlapping of Florida taxes with those of another state or nation.
Appellant’s vessels do not leave the territorial waters of the United States, as did the ship in Lord, nor do they enter the territory of any foreign nation. There is no “commercial intercourse between the United States and foreign nations.” Contrary to the Fourth District’s opinion in New Sea Escape Cruises, Ltd., we see a distinction between vessels that leave Florida’s borders but return to the same port without having entered foreign or international waters, and those vessels that have entered foreign territory or international waters. We find cruises to nowhere that do not leave U.S. territorial waters cannot be engaged in foreign commerce.
Having found the vessels engage in neither interstate nor foreign commerce, we *5 must conclude they engage solely in intrastate commerce. “Vessels and parts thereof used exclusively in intrastate commerce do not qualify for the proration of tax.” § 212.08(8)(a), Fla. Stat.
IV
Accordingly, we affirm the trial court’s finding that Appellant is subject to use tax on the slot machine license agreements and that Appellant does not qualify for a tax exemption pursuant to section 212.08(8), Florida Statutes. To the extent our opinion conflicts with New Sea Escape Cruises, Ltd. v. Dep’t of Revenue, 823 So.2d 161 (Fla. 4th DCA 2002), we certify conflict.
AFFIRMED, conflict certified.
ALLEN, C.J., and BENTON, J., concur.

. Florida’s eastern boundary runs along the Gulf Stream or three geographic miles east of the coastline, whichever is greater. In the Gulf of Mexico, Florida’s boundary, except in the southern part of the state, is three leagues west or south of the coastline. See Art. II, § 1(a), Fla. Const. Because the record in this case establishes only that the vessels left Florida’s territorial waters, we need not determine the exact location of Florida’s boundaries in relation to the cruise routes in this case. Cf. Benson v. Norwegian Cruise Line, Ltd.., 834 So.2d 915 (Fla. 3d DCA 2003). Accordingly, for the sake of simplicity and to remain consistent with the federal Gambling Ship Act of 1994 (discussed below), we will refer to the boundary as three miles.

. See New Sea Escape Cruises, Ltd. v. Dep’t of Revenue, 823 So.2d 161 (Fla. 4th DCA 2002); Klosters Rederi A/S v. Dep’t of Revenue, 348 So.2d 656 (Fla. 3d DCA 1977).